John Houston Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561-9601
Fax: (415) 561-9609
Email: john@scottlawfirm.net

Brian Gearinger, SBN 146125
**GEARINGER LAW GROUP**
740 Fourth Street
Santa Rosa, CA  95404
Tel:  (707) 440-3102
Email: brian@gearingerlaw.com

William A. Cohan, Esq. (SBN: 141804)
**WILLIAM A. COHAN, P.C.**
P.O. Box 3448
Rancho Santa Fe, CA  92067
Tel: (858) 832-1632
Fax: (858)832-1845
Email: bill@williamacohan.com

Attorneys for Plaintiff
SATISH RAMACHANDRAN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATISH RAMACHANDRAN<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ALTOS; KIRK BALLARD; DAVID KORNFIELD; CHRISTOPHER JORDAN; and DOES 1-10<br><br>Defendants. | Case No.:  5:18-cv-01223-VKD<br><br>**PLAINTIFF'S FOURTH AMENDED COMPLAINT FOR DAMAGES**<br><br>(42 U.S.C. SECTION 1983)<br><br>*Jury Trial Demanded* |

Plaintiff alleges in this Fourth Amended Complaint for Damages as follows:

## JURISDICTION AND VENUE

1.      Plaintiff's claims arise under 42 U.S.C. § 1983.  Thus, jurisdiction is conferred on this Court by 28 U.S.C. §§1331 and 1343.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiff's claims arise out of Defendants' acts committed in Santa Clara County, which is within the Northern District of California.

## PARTIES

3.      Plaintiff SATISH RAMACHANDRAN ("Plaintiff") emigrated from India to the United States in 1986.  In 1993 Plaintiff purchased a residence in the City of Los Altos located at 889 Santa Rita Avenue, Los Altos, CA  94022 ("889 Santa Rita").  Plaintiff has resided at that address from 1993 to the present.

4.      Defendant City of Los Altos ("Defendant City") is a public entity and municipal corporation existing under the laws of the State of California.

5.      At all times he is mentioned herein, Defendant Kirk Ballard ("Ballard") was a Building Department employee of Defendant City.

6.      At all times he is mentioned herein, Defendant David Kornfield ("Kornfield") was a Planning Department employee of Defendant City.

7.      At all times he is mentioned herein, Defendant Christopher Jordan ("Jordan") was City Manager of Defendant City.

8.       At all relevant times mentioned herein, Defendants Ballard, Kornfield, Jordan, and DOES 1-10 were employees of Defendant City.  The alleged acts of Defendants Ballard, Kornfield, Jordan and DOES 1-10 were also done under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the City of Los Altos and the State of California.  Defendants

Ballard, Kornfield, Jordan and DOES 1-10 are sued individually and in their capacities as employees of the City of Los Altos.

9.      The true names or capacities, whether individual corporate, association or otherwise, of Defendants named herein as DOES 1-10 are unknown to Plaintiff, who therefor sues said Defendants by fictitious names.  Plaintiff will amend this Complaint to show said Defendants' true names and capacities when the same have been ascertained.

## FACTUAL ALLEGATIONS

### A.     Plaintiff's 2013-2015 Renovation Projects

10.     Plaintiff's first significant communications with Defendant City began in 2013, when Plaintiff developed plans to: (1) convert his garage to a separate residential unit; (2) build a sixty square foot storage shed in his backyard; (3) remodel his home by adding a new kitchen in the area he occupied personally, reducing the existing kitchen to a wet bar as part of an area to be separated from his living space by sealing the connecting doorway; (4) build a carport; and (5) remove and replace his existing patio.  As provided in the Los Altos Municipal Building Code ("LAMC") permits were required for some projects, but not others, e.g. accessory structures – including sheds – less than 120 square feet did not require building permits, LAMC §12.08.020.

11.     On March 20, 2013, Plaintiff met with Defendants Kornfield and Ballard to inquire whether a permit was required for Plaintiff's planned patio replacement.  Kornfield and Ballard advised Plaintiff that the proposed patio replacement was considered "maintenance" and did not require a permit. On the same date, Defendant Kornfield confirmed by email that Plaintiff's intended work on his patio "falls under maintenance and as specified does not require a planning or building permit."

12.     In reliance on the representations made on March 20, 2013, by Defendants Kornfield and Ballard acting as agents of Defendant City, on April 19, 2013, Plaintiff entered into a separate

home improvement agreement with Adam Nicolas Conchas ("Adam Conchas") sole owner of Olympic Construction Co., which held California State Contractor's License Number 864343 issued on or about September 17, 2005, by the Registrar of Contractors, Contractors State License Board, Department of Consumer Affairs, State of California.  Until July 29, 2014, Contractor's License Number 864343 issued to Olympic Construction Co. was in full force and effect.  As a result of Adam Conchas' fraud scheme perpetrated against Plaintiff which was investigated and prosecuted against Adam Conchas and Olympic Construction Co., of which Conchas was the sole owner, pursuant to Business and Professional Code Sections 7090 *et seq.,* License Number 864343 was revoked and Adam Conchas dba Olympic Construction Co. was ordered to pay restitution of $40,316.00.  The Contractors Board Accusation and Decision are attached and incorporated herein as though set forth in full as Exhibit A.

13.     During June 2013, in reliance on the representations March 20, 2013, by Defendants Ballard and Kornfield that Plaintiff did not require a permit to replace his patio, Plaintiff removed his old patio.  Plaintiff has been unable to replace his patio due to the acts and refusals to act of Defendants City, Ballard, Kornfield, Jordan and DOES 1-10.

14.     In addition to the April 19, 2013 patio replacement agreements between Plaintiff and Adam Conchas for which Plaintiff paid Conchas but which Conchas never completed, Plaintiff entered into the following home improvement agreements at 889 Santa Rita Avenue, Los Altos, California 94022 ("889 Property") with Conchas for which Plaintiff paid Conchas, but which Conchas never completed:

(1)     On or about April 2, 2013, Plaintiff paid Conchas $1,000 to obtain permits required by the City of Los Altos for the building, electrical, plumbing, and mechanical improvements;

(2)     On or about April 2, 2013, Plaintiff entered into a separate home improvement contract with Conchas for $13,000 to convert Plaintiff's garage into an Accessory Dwelling Unit ("ADU") for which Plaintiff paid Conchas the requested down payment of $4,500;

(3)     On or about April 17, 2013, Plaintiff entered into a separate home improvement contract with Conchas to build a storage shed;

(4)     On or about April 18, 2013, Plaintiff paid Conchas $1,000 at Conchas' request for an advance to perform work never completed on the garage; and

(5)     On or about April 19, 2013, Plaintiff entered into a separate home improvement contract with Conchas for $8,000 to convert a patio into a sun room, remodel the existing kitchen, and to install a new kitchen.  The total contract price for all the projects was $21,600 and Plaintiff paid Conchas a total of $17,075.

15.     Instead of completing the projects or refunding the unearned payments as described hereinabove, Conchas abandoned those projects on or about May 2, 2013. According to the Declaration of Kirk Ballard executed August 30, 2018, i.e. more than five years after Conchas abandoned the projects at Plaintiff's residence:

> . . . On or about May 8, 2013, General Contractor Adam Couch[1] (sic), who represented that he was working for Mr. Ramachandran, came into City Hall Building Division and filed a written complaint stating "they are converting garage space to living space with bathroom and kitchen including gas-line" without permits.

On April 17, 2020, the City filed a motion for summary judgment in this case, elaborating on Ballard's statement:

> "...when Plaintiff attempted to convert his garage into a second living unit by hiring a contractor in 2013, Plaintiff was not permitted to do so under the then current LAMC. Indeed, based on Plaintiff's insistence to have an ADU in 2013,

---

[1]  Ballard and his counsel mistakenly refer to Adam Conchas as "Adam Couch" in his Declaration and moving papers, respectively, filed in state court.

1

2

> Plaintiff's contractor filed a written complaint against Plaintiff with the City that stated Plaintiff is 'converting garage space to a living space with bathroom and kitchen including gas-line' without permits."

3

4

(ECF Document 142, at page 21, lines 19-24.)

5

6

      The unstated premise of Ballard's and the City's purported reliance on Conchas'

7

"Complaint" is the lie that Plaintiff directed Conchas as his licensed general contractor to perform

8

the work of converting the garage to an ADU without obtaining the required permits. The reason the

9

lie is unstated is the contractor, Ballard and the City all knew it was a lie; i.e., Plaintiff hired and

10

paid the contractor to obtain the permits before the work began. Ballard, Kornfield, Jordan, the City

11

and their attorneys have continued to advance this lie in support of their assaults on Plaintiff's rights

12

ever since Conchas filed his "Complaint." In 2014, Conchas lost his contractor's license and was

13

ordered to pay restitution to Plaintiff. Nevertheless, Defendants and their attorneys have continued

14

to rely upon and perpetuate this lie.

15

16

      Further, Defendants' elliptical reference to "... the then current LAMC" is linked to another

17

of the City's false and fraudulent pretexts to violate Plaintiff's right to convert his garage to an

18

ADU; i.e., despite the indisputable fact that Plaintiff's lot is larger than 15,000 square feet, the City

19

continues to pretend otherwise based on Defendant Kornfield's false and fraudulent (and recently

20

disavowed) claim that "...easements should be deducted from the total area," inducing "...Plaintiff's

21

own architect [to] state[] that the lot size of the Property is 14,933 square feet..."  (ECF Document

22

142, page 7, lines 14-15.)

23

24

      16.    In June 2013, Defendants Kirk Ballard and David Kornfield devised a scheme to

25

deprive Plaintiff of his rights to improve his real property and to rent improved portions of that

26

property located at 889 Santa Rita Avenue, Los Altos, CA 94022 ("889 Property") by false and

27

fraudulent pretenses.

28

PLAINTIFF'S FOURTH AMENDED COMPLAINT FOR DAMAGES

17.     On or about June 25, 2013, Defendant Kornfield caused Defendant City Assistant Planner Sean K. Gallegos to send a letter to Plaintiff falsely claiming that Plaintiff's 889 Property was comprised of less than 15,000 square feet.  Kornfield caused the statement to be made with knowledge of its falsity (i.e. Kornfield knew the 889 Property contained more than 15,000 square feet) with the intent to damage Plaintiff in his property and business by preventing Plaintiff from improving the 889 Property by re-modeling the garage to become a second living unit with bathroom, bedroom and cooking facilities constituting an Accessory Dwelling Unit ("ADU"). According to section 14.14.010 of the Municipal Zoning Ordinance residential lots were not eligible for an ADU unless the lot included at least 15,000 square feet.

18.     In furtherance of the scheme, the following three e-mails were exchanged between Defendants Ballard and Pamela Jacobs, Plaintiff's neighbor at the property located at 885 Santa Rita Avenue, adjoining Plaintiff's 889 Property, on July 12, 2013 and July 17, 2013:

(a)     From: Pamela Jacobs
        Sent: Friday, July 12, 2013 6:44 P.M.
        To: Kirk Ballard
        Subject: 889 Santa Rita Avenue

Dear Kirk:

I spoke with you Monday morning regarding the illegal shed which my neighbor Satish Ramachandran is building … (I had photos of the workers putting the roof on the structure during the holiday weekend).  You gave me your card. I had hoped that you all would have contacted him and stopped work.  Just to let you know, he and his contractors have been busily building it out all week.  The contractor is still here at 6:40 on Friday evening as I write this note.

I seriously want the city to keep this illegal effort from growing.  I've been down personally twice and am now updating you by e-mail. What else am I supposed to do?  My concern is significant because this structure is in contact with … accessory 'cottage' on … and I have no way of knowing what kind of illegal wiring or whatever he is putting in there.  I believe this illegal structure poses a hazard to the safety of my family.  We are in and out of there constantly.

Can you please update me on status and why this continues to move in the wrong direction??
Thank you,

Pam Jacobs

(b)      On July 17, 2013, at 9:57 AM Kirk Ballard wrote:

Dear Pamela Jacobs:

This issue is being addressed as I write this response.  There are meetings and accusations were (sic) dealing with.  I will be in touch, after I visit the property this afternoon.
Thanks for your patience.
Sincerely,
Kirk B. Ballard
Building Official
One North San Antonio Road
Los Altos, CA 94022-3088
650-947-2634 Phone
650-947-2734 Fax
kballard@losaltosca.gov

(c)      Less than two hours after Ballard's e-mail to Pamela Jacobs, she responds:

From: Pamela Jacobs
Subject: 889 Santa Rita Ave
Date:  July 17, 2013 at 11:42 AM
To:  Kirk Ballard KBallard@losaltosca.gov

Dear Kirk:

Thank you for your response.  Good luck!  I look forward to understanding your progress after your meeting.
Sincerely,
Pamela Jacobs.

19.      On or about July 12, 2013, an employee of Defendant City named Greg Anderson, acting in his official capacity as an agent of the Defendant City, entered Plaintiff's backyard at 889 Santa Rita unannounced and uninvited.  Anderson had no legal right to be in Plaintiff's backyard and was trespassing.  Anderson began interrogating Plaintiff, including the question, "Why is that illegal shed there?" Anderson said this despite the fact the shed was not illegal.

20.      Anderson's tone was hostile and accusatory as he asked more questions concerning Plaintiff's home and improvement projects.  Plaintiff answered Anderson's questions, explaining that he was communicating with City of Los Altos staff concerning his home improvements.

Eventually, Anderson raised his voice, asking Plaintiff: "Why do you live here?" "Why don't you move to San Jose?" Anderson then yelled at Plaintiff, "Go back to India!" At that point Plaintiff told Anderson he had crossed a line and Anderson left.

21.     Immediately after Anderson left, Plaintiff contacted Defendant City's Planning Department to report Anderson's hostile, racist conduct. Sean Gallegos of the Planning Department advised Plaintiff to report the incident to Anderson's supervisor.

22.     Instead, Plaintiff contacted Marcia Somers, then City Manager for Defendant City, and described Anderson's hostile, aggressive, and racist behavior.

23.     In response to Plaintiff's complaint to Marcia Somers, Defendant Ballard and James Walgren, another employee of Defendant City, came to Plaintiff's residence within a week of Anderson's visit. Ballard then advised Plaintiff that he needed a permit to replace the patio, which contradicted Defendants Ballard's and Kornfield's previous statements on March 20, 2013. Ballard became belligerent, threatening to impose financial penalties against Plaintiff for removing the patio without a permit. Ballard further demanded that in addition to requiring a permit to replace the patio, that Plaintiff remove the shed he had just built. Ballard claimed the shed had to be removed because it had been built without a permit.

24.     Ballard and Walgren also stated that Anderson was a "good employee," attempting to persuade Plaintiff that his complaint against Anderson was misguided, especially considering purported violations of the LAMC being identified by employees of Defendant City. Plaintiff understood that Defendant City and its employees were retaliating against him.

25.     On July 17, 2013, Plaintiff filed a formal complaint with City Manager Marcia Somers alleging "bias, discrimination, misconduct and abuse" by Anderson, Ballard and Walgren. Plaintiff also contacted the Los Altos City Council to give notice of the arbitrary, discriminatory and unreasonable conduct by Defendant City's Building Department employees.

26.     Plaintiff eventually learned that no building permit was required for his shed. Defendant Kornfield conceded that Plaintiff did not require a building permit for his shed, but Plaintiff was required to meet setback requirements, i.e. the shed had to be at least 30 inches from his property line.

27.     On October 24, 2013, with the help of his neighbor Paul Boetius, Plaintiff moved his shed to comply with the LAMC setback requirements.  On November 7, 2013, Defendant Kornfield performed an inspection for Defendant City and conceded that the shed met the setback requirements.

28.     On or about November 13, 2013, Plaintiff went to the City of Los Altos Building Department to collect the permits for his home improvement projects.  At that time Ballard demanded that Plaintiff pay "administrative citation fees," i.e. the penalties previously threatened, of $1,800 to obtain the permits, which had been approved.  Plaintiff initially refused to pay the penalties, meeting with City Council members to plead his case, but obtained no relief.

29.     Ultimately, Plaintiff paid the penalties and in March 2014, obtained permits for the garage conversion, carport, and kitchen re-model.  Plaintiff abandoned his patio replacement project.

30.     Even after Plaintiff paid the penalties and obtained the permits, Defendant City employees made further arbitrary and capricious demands after conducting inspections, including repeated unjustified demands for additional drawings, dismantling and repeating construction of completed improvements, and delaying completion of the projects.  In addition to: (1) demanding "new drawings" on several occasions after the original versions had been approved; (2) repeatedly changing requirements to obtain approvals; and (3) Defendant City staff also demanded that trenches which had been dug for the water, gas, sewer and electrical lines running to the garage conversion – that had been inspected, approved and filled in – had to be dug up again for "re-

inspection." Another example occurred after Defendant City employees had approved a newly installed sub-floor plumbing line in Plaintiff's home. Defendant City employee Garrett Jones entered Plaintiff's home and directed Plaintiff to cut a hole in his hardwood floor to facilitate "re-inspection." When Plaintiff protested and explained that those lines could be accessed and inspected from the crawl space beneath the floor – which Jones had done several weeks earlier – Jones threatened additional fines and penalties.

31.     In May 2014, Plaintiff sent a letter to then City Manager Marcia Somers and e-mails to Mayor Satterlee and City Council members identifying the arbitrary, capricious and unreasonable interference with his rights to complete his permitted improvements and unequal application of the building code requirements compared to the treatment of renovations by white homeowners in his neighborhood.

32.     In response, Defendant City ultimately hired Mr. Chai Lor, Supervising Inspector for CSG Consultants, Inc. of San Mateo, California, as a qualified independent inspector to review and determine whether Plaintiff's improvements at the 889 Property complied with all applicable building code requirements. The independent inspector determined that Plaintiff's improvements complied with all applicable requirements and gave final approval to each and every one.

33.     On October 14, 2014, the independent building inspector hired by Defendant City in response to Plaintiff's complaints – Mr. Chai Lor, Supervising Inspector for CSG Consultants, Inc. of San Mateo, California – sent the following email to Defendant Ballard:

> To:     Kirk Ballard [KBallard@losaltosca.gov]
> From:  Chai Lor
> Sent:  Tue 10/14/2014 1:02 PM
> Subject:  889 Santa Rita – Carport and Kitchen Permit Final
>
> Kirk:  here is the information you were looking for 889 Santa Rita:
>
> Carport and Accessory Building permit #65112484
> 7-3-14 Final carport and accessory building inspection (FAIL)
> 7-7-14 Re-inspection – Final carport and accessory building (PASS)

Kitchen remodel permit #65113219
8-4-14 Final kitchen remodel (PASS)

If you have any questions please feel free to contact me.
Chai Lor | Supervising Inspector | CSG Consultants, Inc.
1700 South Amphlett Boulevard, 3rd Floor, San Mateo, CA 94402
Tel: 530.531.5343 email chail@csgengr.com

34.     In late 2013 Plaintiff lodged a formal complaint with Defendant City concerning illegal home improvements and construction conducted by Pamela and James Jacobs on their property at 885 Santa Rita Avenue, adjoining Plaintiff's 889 Property.  Defendant City ignored Plaintiff's formal complaint.  Approximately eight months after Plaintiff lodged his formal complaint concerning illegal construction at 885 Santa Rita, Independent Inspector Chai Lor found building code violations at 885 Santa Rita, which also presented a fire hazard to Plaintiff's 889 Property.  Despite being alerted to the Jacobs' violations and fire hazard by Mr. Lor, Defendant City ignored the Jacobs' violations, which never have been pursued.  The Jacobs are white people; that is, Caucasians.

35.     In 2015 Plaintiff obtained a permit to replace an exterior door.  Defendant City sent an inspector to review the door replacement, ostensibly to verify compliance with the conditions of the permit.

36.     Unbeknownst to Plaintiff, Defendant City used the door replacement inspection as a pretext to conduct an illegal search of Plaintiff's residence seeking evidence of code violations.  Eventually, Plaintiff learned from the response to his Public Records Act request that around the time of the inspection Pamela Jacobs was communicating with Defendant Kornfield urging Kornfield to cause a search by Building Department agents for evidence of building code violations in Plaintiff's residence.

37.     On April 23, 2015, Defendant Kornfield sent the following e-mail to Pamela Jacobs, which he copied to Defendant Ballard and Defendant City employee Greg Anderson:

PLAINTIFF'S FOURTH AMENDED COMPLAINT FOR DAMAGES

From:  David Kornfield
Subject:  RE: update on 889 Santa Rita Ave
Date:  April 23, 2015 at 1:22 PM
To:  Pamela Jacobs

Sorry, I meant to mention that the kitchen remodel was previously permitted and inspected as well.  As far as we know there is only one kitchen and a wet bar.  The Building Inspector was aware of the situation when they subsequently inspected the door.

It's not illegal to rent out rooms in a house, or the shop (former garage) for that matter, and use them consent (sic) with their purpose (e.g. renting a bedroom to sleep, renting a shop as an artist's studio).
However, it is illegal to "dwell" in the shop building as that structure is not built to habitable standards.

It may be difficult to establish a code violation based in use; we need to be able to see (witness) it or have some clear physical evidence of such.
Please feel free to call me as there may be some additional questions that are easier to answer on the phone.

Sincerely,
David
David Kornfield
Planning Services Manager
650-947-2632
City of Los Altos
1 North San Antonio Road
Los Altos, CA 94022

**B.**   **The Jacobs Construction at 885 Santa Rita Avenue**

38.   Two residential lots adjoin Plaintiff's property at 889 Santa Rita:  866 Los Altos Avenue, owned by the Winters family and 885 Santa Rita Avenue, owned by Pamela and James Jacobs ("the Jacobs").  The Winters and the Jacobs are white people; that is, Caucasians.

39.   Like Plaintiff, the Winters and the Jacobs have sheds, "accessory structures," in their respective backyards adjacent to their single-family dwellings.  However, the Winters' and the Jacobs' accessory structures are much larger than Plaintiff's 60 square foot structure built in 2013.  Furthermore, the Jacobs' and the Winters' accessory structures violate the laws requiring "setbacks," i.e. minimum distances between property boundary lines and exterior walls of structures

built on the property.  The outside walls of Winters' and Jacobs' accessory structures are located directly on their respective property boundary lines, i.e. there are no setbacks; consequently assuming that the structures were originally permitted after being constructed, the building code classifies them as <u>nonconforming</u> <u>accessory</u> <u>structures</u>.

40.    Los Altos Building Code Section 14.66.060(A), provides:

No nonconforming structure shall be moved, altered, or enlarged unless required by law or unless the moving, alteration or enlargement will result in the elimination of the structure's non-conformity, except that such a residential structure may be altered or enlarged if such change does not increase the nonconformity.

41.    Months after completing the projects at the 889 Property, Plaintiff learned that the Jacobs were planning to increase the size of their accessory structure, claiming Defendant City and Kornfield approved of those plans.  Plaintiff contacted Defendant City Planning and Building Departments, which confirmed that (1) pursuant to Code Section 14.66.060(A), the Jacobs' accessory structure was a nonconforming accessory structure, which could be maintained, but could not be enlarged; and (2) section 14.66.060(A) prohibited enlargement of the nonconforming accessory structure unless the nonconformity was corrected to comply with all current applicable laws, including setbacks and related "daylight plane" requirements. As Defendant City concedes, in order to qualify as a "non-conforming structure", the structure had to be legally constructed and permitted at the time it was built, becoming "non-compliant" due to subsequent changes in the law. (ECF Document 142 at 10, n. 5.)

42.    Numerous communications between Plaintiff and Defendant City during 2016 included assurances by Defendant City that the Jacobs' proposed expansion would not be approved.

43.    To ensure there was no misunderstanding between Plaintiff and Defendant City, Plaintiff sent a letter to Defendant City stating in pertinent part:

"Allowing a non-conforming structure to be improved would suggest some are exempted from rules the rest of us are required to comply with.  Along with others in my neighborhood I feel strongly about that."

44.     Notwithstanding applicable law and Defendant City's assurances of equal enforcement, during late 2016 and early 2017 Plaintiff learned that Defendant City would approve the Jacobs' project despite violating setback and other applicable laws.  The Jacobs sought to transform their purportedly nonconforming accessory structure into an accessory dwelling unit ("ADU") complete with bathroom, fireplace, bedroom and living area, submitting blueprints with their permit application reflecting an empty storage shed as the purportedly nonconforming accessory structure.  As will be shown in detail below, non-white homeowners in Los Altos who sought permits to enlarge their originally permitted, and subsequently nonconforming accessory structures have not been allowed to do so, all as part of the racist scheme of Defendants City, Ballard, Kornfield, Jordan and DOES 1-10 to defraud Plaintiff and other similarly situated non-white homeowners in Los Altos and injure them in their properties and businesses of developing, improving and renting residential units.  The implementation of the racist scheme by Defendants City, Ballard, Kornfield, Jordan and DOES 1-10 to deprive and defraud non-white homeowners of their rights to develop and rent residential units violates those homeowners' civil rights.

45.     Plaintiff met with agents and employees of Defendant City to register his opposition to the Jacobs' project, pointing out to Defendant Kornfield that the Jacobs' building permit application falsely stated that it complied with the setback law, specifically that the outer wall of the nonconforming accessory unit was 25 feet from the rear property line and seven feet from the side property line despite the indisputable fact that there was no setback at all because the wall was on the rear and side property lines.

46.     The Jacobs hired architect Noel Cross to draw plans for the illegal modifications to the Jacobs' purportedly nonconforming accessory structure.  In response to an e-mail from architect Noel Cross seeking an appointment to discuss the Jacobs' project, Defendant Kornfield sent the following e-mail:

On Jan 8, 2016, at 9:53 AM, David Kornfield<
1)   Kornfield@losaltosca.gov> wrote:

Hi Noel,

Nice to hear from you.  I would be glad to meet next week or so.  When you're ready please let me know and we can calendar a date.  I will provide initial input but will transition the project to another planner – my role here has shifted into Advanced Planning efforts.  But given my history with the property I can make sure the project starts off well.

The main concerns here are the accessory structure's nonconforming status.  It doesn't meet the setback or daylight plane requirements for accessory structures.  (see, Section 14.06.120(B) of the Code).

So the important thing with an addition is that the addition meet the Code and maintain the existing structure.  The existing structure cannot be substantially altered such that the nonconforming parts are changed or that a significant amount of the entire structure is modified.  So it's conceivable that an addition could be made that attaches to the existing structure and only alters the existing structure to tie in with it.  Also, in terms of meeting the Code, please note that the accessory structure must have a setback of at least 10 feet to the main structure,

Please let me know if there are any questions.

Happy New Year,
David Kornfield
Planning Services Manager – Advance Planning
650–947-2632
City of Los Altos
1 North San Antonio Road
Los Altos, CA 94022

47.     Between May 2017 and July 2017, Plaintiff sent numerous messages to Defendant City, Los Altos City Council, and then current Mayor Jean Mordo, protesting Defendant City's refusal to enforce the law equally by allowing the illegal Jacobs' project to proceed, (1) specifying applicable statutes and factual details constituting violations for Defendants Kornfield and Jordan as well as Mayor Mordo, and (2) seeking review to demonstrate the violations as well as the fire hazard to Plaintiff's 889 Property from the illegal Jacobs' project. As explained further below, the Jacobs had an even bigger problem with their shed; namely, because it was never permitted, it was illegal and had to be removed or demolished.

48.     Plaintiff received no response other than Defendant Kornfield's statement to Plaintiff on May 25, 2017 that Defendant City had issued a permit to the Jacobs for their illegal project.  In response to Plaintiff's request to appeal Kornfield's decision, Kornfield stated to Plaintiff the decision was final and non-appealable.

49.     Defendant Kornfield knew when he made those statements that they were false: (1) Defendant City did not even issue the permit to the Jacobs for their illegal project until June 2, 2017; (2) the ultimate decision by Defendant City to grant the permit to the Jacobs was not final; and (3) the decision by Defendant City was appealable.  As the Court held in *Horwitz v. City of Los Angeles*, 124 Cal.App.4th 1344, 1356 (2004): "[a] City has no discretion to issue a permit in the absence of compliance with the municipality's building ordinances." The *Horwitz* Court's statement is applicable and binding California law, which prohibited Defendant City from issuing the Jacobs' permit.

50.     Next, Defendant Kornfield caused Defendant City's Planning Services manager Zachary Dahl to send the following e-mail to Plaintiff:

> On Tue, May 30, 2017 at 2:00 PM Zach Dahl< >Dahl@losaltosca.gov>
>
> Hi Satish,
>
> I do not recall the specifics of my conversation with you later (sic) year.  However, I do not have anything further to add regarding your neighbor's project.
>
> As you have heard from the Community Development Director and the City Manager, the project complies with all applicable sections of the City's Zoning Ordinance.
>
> Thank you.
> Zachary Dahl, AICP
> Planning Services Manager – Current Planning
> Community Development Department
> City of Los Altos
> (650) 947-2633

51.     On June 22, 2017, in response to Plaintiff's request (and payment) for records of all building permits issued by Defendant City for the Jacobs' property at 885 Santa Rita Avenue, Defendant City produced permit records that revealed that Defendant City had not issued any permit for the shed – making it an illegal structure. Since summer 2017, the Jacobs have completely renovated and enlarged their purportedly nonconforming accessory structure.  The Jacobs' illegal structure has damaged and continues to damage Plaintiff's property by: (1) creating a fire hazard in the legally required setback area dictated by both California state law and Los Altos municipal law; (2) invading Plaintiff's residential privacy caused by violating the same laws; and (3) reducing the re-sale and rental value of Plaintiff's property.  Pamela Jacobs' violations of Plaintiff's privacy have been exacerbated by the installation of at least twelve cameras during 2016 in the Jacobs' yard monitoring Plaintiff's bedrooms, bathrooms, back yard, and side yard.  The cameras' intrusions have continued to the present.

52.     Plaintiff has repeatedly notified the Los Altos Building and Planning Departments, City Council members and City Manager of unequal and discriminatory treatment, retaliation, harassment, and selective enforcement of the applicable building code provisions continuously since 2013 as alleged hereinabove.

53.     Shortly after Plaintiff's initial complaints about the abusive conduct and discriminatory enforcement of applicable building code provisions by Defendant City's Building and Planning Department agents and employees against Plaintiff in 2013, Defendants City, Ballard, Kornfield, Jordan and DOES 1-10 began committing and continued to commit further discriminatory and retaliatory acts against Plaintiff.  The acts and omissions by Defendants City, Ballard, Kornfield, Jordan and DOES 1-10 constitute a pattern of racially discriminatory law enforcement against Plaintiff.

54.     In furtherance of Defendants' campaign to retaliate against Plaintiff for his

continuing complaints about Defendants' racially discriminatory law enforcement, culminating in

the illegal construction and modification of the Jacobs' purportedly – but actually illegal –

nonconforming accessory structure, Defendant Ballard sent the following e-mail to Plaintiff:

> On Fri, September 8, 2017 at 12:00 PM, Kirk Ballard
> KBallard@losaltosca.gov wrote:
>
> I need to discuss with you some complaints.  Let's meet either at the city or your
> residence next week.  What times will work for you?

55.     The next morning Plaintiff responded to Defendant Ballard's September 8, 2017 e-

mail with the following e-mail:

> From:  Ess Arr [mailto: essarrinc@gmail.com}
> Sent:  Saturday, September 09, 2017 9:46 AM
> To:  Kirk Ballard KBallard@losaltosca.gov
> Subject:  Re: Follow up
>
> Please share details from the complaints also citing the relevant code sections.  As a
> first step I need to review and maybe also correct what needs to be corrected.  That
> also makes for a more focused and productive meeting.

56.     Three days later Defendant Ballard responded to Plaintiff's September 9, 2017 e-

mail by ignoring his request for ". . . details from the complaints also citing the relevant code

sections. . ."  Instead, Ballard sent Plaintiff the following e-mail:

> On Tue, Sep 12, 2017 at 8:12 AM, Kirk Ballard
>
> KBallard@losaltosca.gov wrote:
>
> Good Morning, Mr. Ramachandran:
>
> I need to investigate your property.  I am seeking your cooperation by setting up a
> day and time to conduct the inspection within the next 48 hrs.
>
> There has been a complaint regarding un-permitted construction and alterations and
> the inspection will determine what violations of the Municipal Code, if any, have
> occurred.
>
> See the 2016 California Residential Code, R104.6 Right of Entry.

R104.6 Right of Entry.

Where it is necessary to make an inspection to enforce the provisions of this code, or where the building official has reasonable cause to believe that there exists in a structure or upon a premise a condition that is contrary to or in violation of this code that makes the structure or premise unsafe, dangerous or hazardous, the building official or designee is authorized to enter the structure or premise at reasonable times to inspect or perform duties imposed by this code, provided that if such structure or premise be occupied that credentials be presented to the occupant and entry requested.  If such structure or premise is unoccupied, the building official shall first make reasonable effort to locate the owner, the owner's authorized agent, or other person having charge or control of the structure or premises and request entry.  If entry is refused, the building official shall have recourse to the remedies provided by law to secure entry.

Kirk Ballard
Building Official
City of Los Altos
(650) 947-2634

57.     Plaintiff immediately responded to Defendant Ballard's September 12, 2017 e-mail sent at 8:12 AM with the following e-mail sent 36 minutes later:

EssArr essarrinc@gmail.com
To:  Kirk Ballard KBallard@losaltosca.gov
Cc:  Amanda Pitman Apitman@losaltosca.gov

Kirk

"There has been a complaint regarding un-permitted construction and alterations and the inspection will determine what violations of the Municipal Code, if any, have occurred."

I respect the Code's R106.4 Right of entry.
I am also confident there has been no unpermitted construction or alteration.  Construction work/alteration was last performed early 2015.  It was done with a permit 3/2015 and later inspected and signed off by the City 4/2015.  I am also confident there is nothing that is contrary to or in violation of the Code that makes the structure or premise unsafe, dangerous or hazardous.

I therefore have good reason to demand you clarify first what 'un-permitted construction and alteration' has been reported in the complaint and how it presents 'a condition that is contrary to or in violation of this code that makes the structure or premise unsafe, dangerous or hazardous.'  Cite the Code sections apparently violated the Code (sic) and makes the structure or premise unsafe, dangerous, or hazardous.  Is it in the residence?  The workshop? Back yard? Side yard? Front yard?

PLAINTIFF'S FOURTH AMENDED COMPLAINT FOR DAMAGES

I wish to emphasize I'm completely open to allowing an inspection as determined by R106.4. I'm open to scheduling a date/time within 48 hours of your clarifying the above. First I need to understand and therefore request once again you clarify what the complaint is about and how you determined I may have 'un-permitted construction/alterations' that present 'a condition that is contrary to or in violation of this code that makes the structure or premise unsafe, dangerous, or hazardous.'

I await your clarification and answers to the above.
/s

58.     The next day Defendant Ballard sent the following e-mail to Plaintiff:

Kirk Ballard KBallard@losaltosca.gov
To: essarrinc@gmail.com<essarrinc@gmail.com
cc: Jon Biggsjbiggs@losaltosca.gov, Amanda
        Pitman< APitman@losaltosca.gov>

Hello Mr. Ramachandran:

The complaint alleges that unpermitted work has been conducted on the property. I would be more than happy to provide you with specifics, but I am not able to predict if there are violations and only an inspection can determine if the alleged violation is unfounded or true. Once we have completed the inspection, we will be able to provide you with specifics if the inspection finds the complaint is valid. I am sure you can appreciate that our construction codes are intended to address the health and safety of buildings that people live and work in and appropriately permitted and inspected construction activities help keep occupants safe.

It is good that you have asserted and confirmed in writing that no un-permitted work has taken place and I have no reason to doubt you, but unfortunately your assertions do not relieve us of our duty to follow up on and investigate a complaint; thus, this request that we arrange a time to conduct the inspection so that we can determine the validity of the complaint and provide you with the specifics on violations if they are found.

I look forward to your cooperation and contacting us to schedule the inspection.

Kirk Ballard
Building Official
City of Los Altos
(650) 947-2634
KBallard@losaltosca.gov

59.     In response to Plaintiff's Public Records Act request for copies of the complaint(s) allegedly made according to Defendant Ballard, no such complaint has ever been produced.

60.     Defendant Ballard's September 2017 e-mails were not based on any complaint, nor was there an objectively reasonable basis for any such complaint.  Instead, Defendant Ballard's fraudulent attempts to induce Plaintiff to consent to "an inspection" was a pretext to invade his home to fabricate eyewitness perjury claiming to have seen "un-permitted construction" and/or "unsafe, dangerous or hazardous" condition(s) inside Plaintiff's home.  Several e-mails between Defendants Ballard, Kornfield and other agents of Defendant City sent shortly before Ballard's September 2017 e-mails describe "the plot" to invade Plaintiff's home to manufacture evidence of "un-permitted construction" and/or "unsafe, dangerous or hazardous" conditions.  The plot was eventually pursued to near completion after the Jacobs' attorney sent a letter July 3, 2018 to the City Attorney, Chris Diaz, complaining about alleged code violations.

61.     On October 11, 2017, Plaintiff filed a formal appeal of the Jacobs' permit with Defendant City, which has ignored Plaintiff's appeal.

**C.     The Jacobs' July 3, 2018 Complaint To The City Directly Results In An Illegal Search, False Allegations of Code Violations And Related Demands And Fines, The Immediate Eviction of A Tenant, Threats of Additional Consequences And A Still Pending Criminal <u>Prosecution</u>**

62.     On June 29, 2017, the Jacobs sued Ramachandran in state court over a boundary dispute they manufactured in conjunction with the plan to improve their property at the expense of Ramachandran. For over 20 years they shared a fence that pre-existed when they purchased their respective adjoining properties.  Ramachandran cross-complained for a battery committed by James Jacobs which occurred at the property line on June 9, 2017.  These claims are not raised or at issue in this action.

63.     On February 25, 2018, Plaintiff initiated the instant action, alleging, among other claims, discriminatory enforcement of the Building Code.

64.     On May 28, 2018, Plaintiff filed a Code Enforcement Complaint ("CEC") with Defendant City identifying several Building Code violations at 885 Santa Rita Avenue – the Jacobs'

property – that presented fire and safety hazards to Plaintiff and his adjacent property.  These violations were confirmed by Defendant City agents, including exposed electrical wiring on the fence between Plaintiff's and the Jacobs' properties demonstrated by photographic evidence submitted with the CEC.

65.     On June 5, 2018, Defendant City dismissed Plaintiff's CEC, insisting no violations existed despite those violations, which persist to this day.

66.     On July 3, 2018 the Jacobs' attorney, David Marks, sent a letter to the City Attorney, Chris Diaz, asserting false allegations of building code violations on the plaintiff's property relating primarily to projects that had previously been permitted and approved by the City.

67.     On July 11, 2018, Plaintiff filed his First Amended Complaint in this action.

68.     On August 31, 2018, Defendant Ballard and other City agents obtained a search warrant to inspect Plaintiff's property in response to a complaint from the Jacobs set forth in their attorney's letter dated July 3, 2018.

69.      The search warrant was sought and obtained by the City by defrauding the County of Santa Clara Superior Court which issued the search warrant.  This fraud was perpetrated by submitting a fraudulent declaration signed by Defendant Ballard.

70.     Defendant Ballard's declaration submitted to the Court issuing the search warrant for Plaintiff's property contained the following omissions of material facts to defraud the court issuing the warrant: (1) Plaintiff had filed his initial Complaint in this matter on February 25, 2018; that is, over six months before Defendant Ballard submitted his fraudulent declaration; and (2) Plaintiff had named Defendant Ballard as an individual defendant in Plaintiff's initial Complaint.[2]

---

[2] "Defendant KIRK BALLARD is an individual and has worked for the CITY OF LOS ALTOS during all times relevant to this complaint. BALLARD is, and was at all times relevant to this complaint, employed by LOS ALTOS and

71.     Defendant Ballard's declaration submitted to the Court issuing the search warrant for Plaintiff's property further contained the following false statements regarding material facts to defraud the court issuing the warrant:

(a)  Paragraph 2 of Ballard's declaration includes the statement:

> "On or about May 8, 2013, General Contractor Adam Couch,[3] who represented that he was working for Mr. Ramachandran, came into City Hall Building Division and filed a written complaint stating 'they are converting garage space to living space with bathroom and kitchen including gas line without permits.'

Although this statement is technically true, Ballard omits the fact that Adam Conchas was the general contractor hired and paid by Plaintiff to obtain the permits required to perform the garage space conversion as well as hired and paid by Plaintiff to perform the work necessary to accomplish the garage conversion and additional work at 889 Santa Rita Avenue.

(b)     In paragraph 11 of his declaration, Defendant Ballard implicitly admits that he is aware that Plaintiff's allegations against Conchas were established during the proceedings before the State Contractors Board in 2014.  But instead of Ballard admitting his knowledge that Conchas himself was: (1) legally responsible for obtaining the required permits; (2) paid to perform the work and obtain the permits; and (3) guilty of defrauding Plaintiff, which resulted in revocation of Conchas' contractor's license and an Order to pay $40,000 in restitution, Ballard's declaration asserts:

> The Accusation [filed by Plaintiff before the California Contractors State License Board] in that action alleges that Mr. Couch (sic) made unpermitted alterations to the residential structures on the Property by

---

was acting under the color of law as it pertains to this complaint. BALLARD is being sued in his individual and official capacity." ECF Document 1.

[3] As noted above in footnote 1, above, the person identified by Ballard as Adam Couch was and is Adam Conchas.

constructing a second living unit within the detached garage and building
a third kitchen in the main residence on the Property.

The details of Conchas' fraud victimizing Plaintiff are set forth in paragraphs 12 to 15

hereinabove, incorporating the Contractors Board Accusation and Decision attached to this Fourth

Amended Complaint as Exhibit A.

(c) In paragraph 4 of his declaration, Defendant Ballard asserts:

On or about July 15, 2013, the City obtained access through consent by the Owner to
the converted detached garage.  A video was taken during that investigation that shows that
a cooking range, microwave, dishwasher, stacked washer dryer, refrigerator, shower, toilet
and sink had all been installed in the detached garage, which verified the allegations in the
contractor's (Conchas) complaint.

Defendant Ballard knew when he fabricated and signed his declaration no 'cooking range,

microwave, dishwasher, stacked washer dryer, refrigerator, shower, toilet [or] sink' had been

installed in the detached garage.  Defendant Ballard committed perjury by making these false

statements and committed perjury again by stating these non-existent 'facts' – '. . . verified the

allegations in the contractor's complaint.'

(d) In paragraph 5 of his declaration, Defendant Ballard asserted:

On or about June 25, 2013, Sean Gallegos, the City's Assistant Planner, sent
a letter to Mr. Ramachandran informing him that the accessory structure was
permitted for garage use only and its conversion into a second living unit was
unpermitted.  He further informed Mr. Ramachandran that under Los Altos
Municipal Code section 14.14.010 the Property was not large enough to permit a
second living unit with a kitchen.

A true and correct copy of that letter is attached hereto and incorporated herein as Exhibit B.

As Defendant Ballard well knew, the letter included as Exhibit B is also fraudulent in falsely

asserting that 889 Santa Rita Avenue was not large enough to permit a second living unit with a

kitchen.

(e)     In paragraph 7 of his declaration, Defendant Ballard admits that permits were

issued to perform all the work necessary to convert the garage into a second living unit,

Defendant Ballard repeats the lie that Plaintiff's property included less than 15,000 square feet to provide the pretext to prevent Plaintiff from conducting the business of renting his converted garage as a dwelling unit to deprive Plaintiff of rental income and damage his property.

(f)     Furthermore, Ballard's declaration omits the material facts that Plaintiff's complaints against Defendants City, Ballard and Kornfield and others, submitted to then City Manager Marcia Somers, resulted in the City Manager causing the City to hire a qualified independent inspector to inspect and determine whether the permitted improvements complied with applicable laws.  The inspector certified that the improvements complied with all applicable laws.  An e-mail sent to Ballard by the independent inspector on October 14, 2014, confirmed that all the improvements passed inspection.

(g)     As set forth hereinabove in paragraph 37, Ballard was copied on Defendant Kornfield's April 23, 2015 email, sent to Pamela Jacobs in which Defendant Kornfield admits what Defendant Ballard already knew, i.e.: '…the kitchen remodel was previously permitted and inspected as well.  As far as we know there is only one kitchen and a wet bar.'

72.     On September 6, 2018, Defendant Ballard signed a report purportedly based on the search conducted pursuant to the warrant. Ballard's report included the following:

(a) ... pursuant to inspection it was determined … the property contains 3 living units, and an illegally placed outdoor shed structure.

(b) The detached accessory structure shall be deemed and hereby declared a substandard building, public nuisance and uninhabitable for living purposes.

(c) The remaining walled off living unit in the main residence and the illegally placed shed contain additional violations …

(d) As of October 6, 2018, you are required to:

1. vacate the premises of the detached accessory living unit, remove all occupants, and secure and maintain …

- 26 -

2. provide complete architectural and structural plans for City approvals; or provide demolition permit…;

3. obtain permits for an ADU
4. obtain a demolition permit to remove the kitchen, walled off area of the main residence and illegal construction done in the main residence without benefit of permits and plans;

5. obtain permits to legalize all substandard conditions;

All with a 30 days deadline – November 6.

The attached inspection report states:

1. The detached accessory structure has a lack of adequate heating facilities creating a public nuisance;
2. Lack of a certificate of occupancy;
3. Inadequate seismic loading, construction is not to code;
4. Hazardous building electrical, plumbing and mechanical issues may be present;
5. No vapor barrier;
6. Hazardous illegal bedroom;
7. Three living units on property; and

Unsafe buildings – illegal electrical, plumbing, mechanical, construction and inadequate seismic loading.

73.     On September 16, 2018, Plaintiff notified Defendants of the false and fraudulent claims in Defendant Ballard's September 6, 2018 "report" by letter from his then attorney Fulvio Cajina e-mailed to Defendants Jordan, Ballard and Defendant City's City Council.  The letter noted the following facts:

(a) This letter constitutes Plaintiff's Appeal to Notice and Order – 889 Santa Rita Avenue, Los Altos, CA 94022, APN 167-18-060

(b) The Notice, signed by Mr. Ballard, alleges that Mr. Ramachandran's property is in violation of the Los Altos Municipal Code, the California Building Code, and the Uniform Housing Code.

(c) Specifically, the Notice states that there are three items on Mr. Ramachandran's property that are in violation of the above laws.  First, the placement and construction of a 50 square-foot outdoor shed in Mr. Ramachandran's backyard. Second, the existence of an alleged <u>third</u> kitchen at Mr. Ramachandran's home (which only has two stoves, one of which is in an accessory unit).  And third, alleged violations in connection with the accessory unit.

(d) All three of the above items were inspected and approved by the City of Los Altos in the past.  As such, it is clear that this Notice is nothing more than further retaliation by the City – retaliation that opens the City to further liability and which will require the City of Los Altos taxpayers to foot this bill.  Below we address each of these purported violations in turn.

1. **Outdoor Shed**

The Notice incorrectly states the outdoor shed located on the Property is in an illegal location (i.e., fails to have 2.5 foot setbacks) and was constructed without a permit.

The shed meets the 2.5 foot setback requirement outlined in the LAMC.  The setback from the western property line is 31 inches, an inch more than the 30 inches (2.5 feet) required by code.  The setback from the southern neighbor (the Winters), extends 34 inches from the property line.

In fact, Mr. Ramachandran notified David Kornfield on November 4, 2013 that he had moved the shed to be in compliance with the LAMC.  *The City has been aware of the outdoor shed's setback compliance for the past 5 years.*

Regarding a purported lack of permit for the construction of the outdoor shed, such a permit is not required by the code.  Mr. Ramachandran's shed is only 50 square feet.  Chapter 1, Division II, Section 105.2 of the 2016 Building Code requires only that structures in excess of 120 square feet be constructed with a building permit.  Here, the shed is less than 120 square feet so a building permit was not required.

2. **Third Living Unit**

LAMC 14.02.070 defines a "dwelling" as a structure containing one or more rooms and one kitchen designed for human occupancy.  In other words, for Mr. Ramachandran's property to have "[t]hree living units", it would necessarily need to have three kitchens.  It does not.

A "kitchen" means any room or area intended or designed to be used or maintained for cooking, storing, and preparation of food.  Furthermore, an operable stove is required for a kitchen.  Without a stove a kitchen does not exist and a dwelling is not created in accordance with the LAMC.

Again, between 2013 and 2014, Mr. Ramachandran obtained a permit from the City to build a new kitchen in the primary dwelling.  Subsequently, Mr. Ramachandran, under the approval of the Building and Planning Department, converted his original kitchen into a "wet bar" – a room with a sink but no stove.

Despite the Notice, the City has absolutely no evidence that a third stove exists on the premises.  An inspection was conducted on the property and no such stove was found.

Furthermore, the premises have no illegally walled-off areas. An internal doorway may be infilled without a building permit. Again, there are no building code violations present – a fact known to the City which inspected and approved all of Mr. Ramachandran's improvements.

3. **Detached Accessory Structure**

Finally, despite statements made in the Notice, the detached accessory structure on Mr. Ramachandran's property was built in accordance with the then applicable Building Code and the 1997 Uniform Housing Code. In fact, the construction of the accessory structure was permitted and approved by the City.

A. Lack of Adequate Heating Facilities

The structure is equipped with adequate heating facilities, i.e. a hydronic heating system. Hydronic heating systems are commonly used in homes and supply adequate heating. Because an adequate heating facility is contained within the structure, UHC Chapter 10 is not violated.

Moreover, the Notice points to LAMC Section 11.10.020 as authority for asserting that a violation was committed. However, no portion of Section 11.10.020 discusses heating facilities.

B. Certificate of Occupancy

In 2014, Defendant City told Mr. Ramachandran he would be provided a certificate of occupancy for the accessory structure when he paid all necessary administrative fees and a final inspection was conducted and approved. Kornfield's notes on the building plans for the conversion of the garage confirm that representation.

Mr. Ramachandran was provided a hardship waiver in regard to the fees. Chai Lor – the outside building inspector provided by the City back in 2014 – conducted a final inspection which stated that a final sign off would be provided pending the payment of administrative fees. Mr. Lor inspected and approved the accessory structure. Mr. Ramachandran met all of the requirements to receive the certificate of occupancy for the conversion of his detached accessory unit.

C. Not Designed as a Residence

The plans submitted to the Los Altos Building Services clearly indicate that the conversion of the garage was designed as a residence. The structure's plans showed a refrigerator, bathroom, sinks, washer/dryer, water heater etc. It is irrefutable that the plans submitted to the City clearly illustrated a design intended as a residence.

D. Seismic Loading: Energy Efficiency Standards Not Complied with;
   Hazardous Building, Electrical, Plumbing, and Mechanical; No Vapor
   Barrier; and Hazardous Bedroom Location of Water Heater

A total of five inspections were conducted of Mr. Ramachandran's accessory structure between 2013 and 2014.  In the final inspection conducted by Chai Lor, there was no evidence that any of the above stated issues were present.  To the contrary, Mr. Lor's reports show that the structure has adequate seismic loading, meets the energy efficiency standards, and there are no hazardous electrical, plumbing, or mechanical issues.

Regarding the vapor barrier, the City never brought that up as an item in 2013-2014 plans or inspection whereas several other items – smoke and carbon monoxide monitoring, ridge reinforcement for seismic safety, GFCI outlets, energy efficient lighting, etc., were all required and inspected, as needed for dwelling structures.

74.     On September 6, 2018, agents and employees of Defendant City posted six (6) sets of notices to vacate, in different conspicuous locations, on Plaintiff's property, requiring Plaintiff's lodger in his legally converted garage to vacate.  Plaintiff's lodger moved out the next day after agents and employees of Defendant City posted the notices to vacate.

75.     The notices were signed by Defendant Ballard.  Defendant City continued to post notices – Notices to Vacate and Stop Work – on Plaintiff's property during the next week. By then the City was aware that Plaintiff's lodger had already vacated the property and no work was being done on Plaintiff's property.

76.     On September 11, 2018, Plaintiff removed one of the notices to vacate on his property to take to his then attorney.  Immediately, he was confronted by City police officer Vitorello who had been surveilling Plaintiff's property.  Although there were five (5) other notices to vacate still posted on the property, the police officer cited Plaintiff with a misdemeanor for removing one notice – despite Plaintiff's offer to replace the notice.  The officer insisted that Plaintiff's reinstalling the notice could not absolve him of the alleged crime of "removal," despite the required element of intent to impede enforcement of the building code.  Immediately after issuing the citation to Plaintiff, Officer Vitorello stated by radio to an unidentified male ("UM"): Officer Vitorello: "I on-viewed one, is that good enough?"  UM: "Exactly.  That's all we needed." The City continues to criminally prosecute Plaintiff for allegedly removing one of six Notices to

Vacate posted by Defendant Ballard regarding a garage conversion previously inspected and approved by the City.  The case number is County of Santa Clara Superior Court Case Number B1899994.

**D.  Defendant City's History and Pattern of Violating Equal Protection**

77.     According to the most recent United States census, the City of Los Altos population reflects a statistically significant lack of racial diversity, particularly compared to the entire 1.9 million persons population of the County of Santa Clara, which is approximately:

White 31%

African American 2.8%

Hispanic or Latino 25.3%

Asian 38.3%

Native American, Native Alaskan, Pacific Islander 1.7%

By comparison, Los Altos has approximately 29,000 residents, of whom:

Approximately 65% are White,

0.3% are African American,

4.4% are Latino or Hispanic,

Asian 29.4%, and

Native American, Native Alaskan, Pacific Islander 0%

78.     This lack of diversity is reflected in the persons employed by Defendant City. Throughout his many contacts over the most recent seven years with people employed by the Defendant City in the Community Development/Building and Planning Department, Police Department, City Hall management and the City Council, Plaintiff has encountered only one or two non-white employees.

79.     The following is a partial list of victims injured by Defendants' pattern of racial discrimination by which defendants have violated non-white homeowners' rights protected by the

- 31 -

Fourteenth Amendment and injured them in their businesses of developing and renting their residential properties and damaged their properties.

**1. Kedia Family, 211 Portola Court. 2015 to current.**
   a.   Defendants demanded removal of a legal nonconforming accessory structure ("NCAS") based on a minor repair of its roof.  In contrast Defendant City permitted Jacobs to re-roof, expand, and convert their illegal NCAS to a dwelling.
   b.   The Kedias were prohibited from having a kitchen in their legal NCAS as their lot (12500 square feet) was under the 15000 square feet required for a second dwelling unit. In contrast defendants permitted Jacobs (lot size 9240 square feet) to construct a second dwelling unit with a kitchen.
   c.   The Kedias remodeled their kitchen with a permit. Defendant City inspector, acting for Ballard, told them "*This might work in India, not here*" and refused to inspect or approve their remodeled kitchen on the pretext the Kedias' front yard needed to be landscaped first.
   d.   Defendant Ballard issued Stop Work Notices to the Kedias even when no work was being performed.

**2. Chris and Emily Ling, 628 Almond. July 2016.**
   a.   NCAS expansion prohibited as: a) Defendant City has no record of the structure; b) their lot size, 11430 square feet,) did not qualify for a second living unit. Lings also were required to remove the kitchen (if any) in that structure.
   b.   Contemporaneously Defendant City exempted the Jacobs, lot size 9240 square feet from what was required of, but denied to, the Lings. Defendant City has no record of the Jacobs structure.

**3. Daniel and Soyee Lee Family, 674 Parma. June 2011**
   a.   Defendant City required a site permit for a less-than-120 square feet shed, threatening administrative citations. Jacobs' shed larger than 120 square feet was exempted.

**4.  Agarwal Family, 86 Pine. May 2011.**
   a.   Defendant City demanded the unauthorized NCAS – a carport – be removed or moved to comply with setback requirements or administrative penalties would be assessed. Jacobs unauthorized NCAS was exempted.

**5. Kumar Family, 260 Hawthorne. Sept 2012.**
   a.   Defendant City demanded unauthorized NCAS – a carport – be removed or moved to comply with setback requirements or administrative penalties would be imposed. Defendant City exempted Jacobs' illegal NCAS.

**6. Kamil Family, 1507 Maple. June 2012.**

a.      Defendant City demanded the unauthorized NCAS – carport – be removed or moved
to comply with setback requirements or administrative penalties would be imposed.
Defendant City exempted Jacobs' illegal NCAS.

**7. Amir Matiyahu & Family, 191 Pine. April 2017.**
a.      Defendant City demands unauthorized NCASes (at least one; likely more) be
removed or moved to comply with Code setback or administrative penalties will be
assessed. Owners were required to obtain building permits for structures and
schedule inspections to confirm their Code compliance. Defendant City exempted
Jacobs' illegal NCAS.

**8. Katsumi Takabatake, 1489 Brookmill. March 2013.**
a.      Defendant City demands unauthorized NCAS be removed or moved to comply with
Code setback requirements or administrative penalties will be assessed. Defendant
City exempted Jacobs' illegal NCAS.

**9. Reza and Ladan Yazdani, 911 Matts. Feb 2017.**
a.      Defendant City demands that the Yazdanis "*correct side setback violations, maintain
their property free of violations...obtain a variance within ten days of notice...get a
building permit*" or face administrative citations. Jacobs's was exempted.

**10. Noemi Estoesta, 60 Doud. Oct 2013.**
a.      Defendant city required unauthorized NCAS be removed or moved to comply with
Code setback requirements or administrative penalties would be assessed. Jacobs
exempted.

**11. Kanyal Residence, 195 Del Monte. May 2017.**
a.      Defendant City confirmed the replacement of the roof of a nonconforming structure
would be an issue, but Defendant City decided Jacobs were exempted and permitted
installation of a new roof and expansion of their NCAS.

**12. Anita and Ramesh Kuba, 10 Sylvian. July 2016.**
a.      Defendant City required **s**ite and building permits, and Code compliant setbacks
were required for their shed. Defendant City exempted Jacobs' illegal NCAS.

**13. Nguyen Family, 473 W Portola. July 2015.**
a.      Defendant City required *nonconforming shed in left side yard to be removed or
relocated to meet Code.* Jacobs's was exempted.

**14. Mahesh Kailasam and Deepika Chauhan. 1583 Landell. 2011-2016.**
a.      Initially, Defendant City assured Kailasam and Chauhan they could add second story
to  their residence, then prevented them from doing so, requiring them to apply for a
variance, which was denied on basis: *"Strict application of the zoning code would
require the first story be modified to meet the required setbacks."* Jacobs's were
exempted from "*strict application of the zoning code*", which was similar to
Plaintiff's experience in 2013 when staff assured Plaintiff no permit was needed to
replace the patio, then reneged.

**CONTINUING VIOLATIONS**

80.     As alleged above, the wrongful acts and omissions giving rise to the Defendants' liability in this action commenced in or about July 2013 and are "continuing" in nature to the present time given that all such acts constitute part of a systematic policy or practice of discrimination against non-white homeowners by agents and employees of Defendant City and/or constitute a series of separate acts that collectively constitute one unlawful practice. Defendants City, Ballard, Kornfield, Jordan and DOES 1-10 have, among other things, retaliated, discriminated, and otherwise violated Plaintiff's civil rights from 2013 to the present.

**DAMAGES**

81.     As a result of the conduct of Defendants City, Ballard, Kornfield, Jordan and DOES 1-10, Plaintiff sustained economic damages and consequential damages.

82.     As a result of the conduct of Defendants City, Ballard, Kornfield, Jordan and DOES 1-10, Plaintiff sustained and will continue to sustain damages to his reputation, future and prospective earning capacity and wages, and prospective economic opportunities and advantages in an amount determined according to proof.

83.     As a further result of the conduct of Defendants City, Ballard, Kornfield, Jordan and DOES 1-10, Plaintiff suffered and will continue to suffer general damages including fear, anxiety, humiliation, and emotional distress in an amount to be determined according to proof.

84.     The actions of Defendants Kirk Ballard, David Kornfield, and Christopher Jordan were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of the plaintiff, who seeks punitive and exemplary damages according to proof.

85.     Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorneys' fees.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**[First Amendment Violation – As to Ballard, Kornfield, Jordan]**

86.     Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as though fully set forth herein.

87.     Plaintiff was engaged in constitutionally protected activity when complaining to the Defendant City and its employees regarding discriminatory treatment from 2013 through the present.  In addition, the plaintiff engaged in a protected activity by filing this lawsuit on February 25, 2018.

88.     Defendants Ballard, Kornfield, and Jordan took actions against Plaintiff to chill his protected activity by (i) Kornfield and Ballard making permitting and code enforcement decisions aimed at infringing on Ramachandran's property rights in response to Plaintiff's complaints against agents and employees of the Building and Planning Departments; and (ii) Defendants Ballard, Kornfield, and Jordan fabricated purported "code violations" at 889 Santa Rita in response to Plaintiff's complaints and lawsuit.  Defendants ultimately pursued code enforcement actions by fraudulently obtaining and executing a search warrant and fabricating code violations for projects previously approved by Defendant City.  Such actions would, and are meant to, chill a person of ordinary firmness from continuing to engage in protected activity.

89.     Plaintiff's protected activities were a substantial or motivating factor in the defendants' conduct as alleged above.

90.     As a direct result of defendants' actions and inactions, plaintiff's First Amendment constitutional rights and federally protected rights pursuant to 42 U.S.C. §1983 were violated. Moreover, such actions represent a continuing violation. The Defendants have been violating Plaintiff's First Amendment rights continuously since 2013 through the present.

91.     The conduct of the above individual Defendants was willfully intended to cause injury to Plaintiff.  Because the above acts by the individual defendants were performed in an intentional and willful manner, Plaintiff is entitled to recover punitive damages from named individual Defendants in an amount according to proof.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## SECOND CAUSE OF ACTION
**[Fourteenth Amendment Violation – Equal Protection – as to Defendants Ballard, Kornfield, and Jordan]**

92.     Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as though fully set forth herein.

93.     Defendants Ballard, Kornfield, and Jordan acted in a discriminatory manner based on plaintiff's race and national origin in violation of the Fourteenth Amendment. This impacted Plaintiff's property rights as compared to white home owners resulting in a private taking or substantial devaluation of Plaintiff's property, and adversely impacted plaintiff's use and enjoyment of his property.  Said defendants also manufactured purported "code violations" at 889 Santa Rita for projects previously approved by Defendant City.

94.     As a direct result of defendants' actions and inactions, plaintiff's Fourteenth Amendment constitutional rights and federally protected rights pursuant to 42 U.S.C. §1983 were violated.

95.     The conduct of the above individual Defendants was willfully intended to cause injury to Plaintiff.  Because the above acts by such defendants were performed in an intentional and willful manner, Plaintiff is entitled to recover punitive damages from the named individual Defendants in an amount according to proof.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**THIRD CAUSE OF ACTION**
**[Municipal Liability under Section 1983 – As to City of Los Altos]**

96.     Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as though fully set forth herein.

97.     At all times relevant to this complaint, including prior to 2013 and up to the present, Defendant City of Los Altos has had and maintained a widespread and longstanding custom and practice of treating non-white homeowners disparately compared to its white homeowners. Minority homeowners in Los Altos do not enjoy the same "privileges and immunities" as white homeowners. This custom and/or practice constitutes the standard operating procedure for Defendant City.  This longstanding custom or practice is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injuries.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**FOURTH CAUSE OF ACTION**
**[Municipal Liability under Section 1983 – As to City of Los Altos]**

98.     Plaintiff incorporates herein by reference the preceding paragraphs of this complaint as though fully set forth herein.

99.     Defendants Ballard, Kornfield and Jordan had final decision making and/or final policy making authority for the City of Los Altos concerning their acts and decisions alleged herein. Their acts were so closely related to the deprivations of plaintiff's rights as to be the moving force that caused the ultimate injuries.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against defendants as follows:

1.     For compensatory damages and other special damages according to proof;

2.     For general damages according to proof;

PLAINTIFF'S FOURTH AMENDED COMPLAINT FOR DAMAGES

1    3.    For punitive damages against all individual defendants according to proof;

2    4.    For prejudgment interest at the legal rate according to proof;

3    5.    For costs and reasonable attorneys' fees as provided by 42 U.S.C. §§ 1983 and 1988;

4    and

5    6.    For such other relief as the Court may deem just and proper.

6

7    **JURY DEMAND**

8    Plaintiff demands a jury trial in this action.

9    Dated: April 27, 2020                         Respectfully submitted,

10                                                  **SCOTT LAW FIRM**

11                                                  By: /s/John Houston Scott
                                                        John Houston Scott
12                                                      Attorney for Plaintiff

13

14   Dated: April 27, 2020                         **WILLIAM A. COHAN, P.C.**

15

16                                                  By: /s/William A. Cohan
                                                        William A. Cohan
17                                                      Attorney for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1   KAMALA D. HARRIS
    Attorney General of California
2   DIANN SOKOLOFF
    Supervising Deputy Attorney General
3   SHANA A. BAGLEY
    Deputy Attorney General
4   State Bar No. 169423
    1515 Clay Street, 20th Floor
5     P.O. Box 70550
    Oakland, CA 94612-0550
6     Telephone: (510) 622-2129
    Facsimile: (510) 622-2270
7   *Attorneys for Complainant*

8

9

10

BEFORE THE
REGISTRAR OF CONTRACTORS
CONTRACTORS' STATE LICENSE BOARD
DEPARTMENT OF CONSUMER AFFAIRS
STATE OF CALIFORNIA

11

| In the Matter of the Accusation Against: | Case No. N2013-237 |
| --- | --- |
| **OLYMPIC CONSTRUCTION CO., ADAM NICOLAS CONCHAS, Sole Owner**<br>**10300 Reva Court**<br>**San Jose, CA 95127** | **A C C U S A T I O N** |
| **Contractors License No. 864343 (Class B and C33)** | |
| Respondent. | |

Complainant alleges:

### PARTIES

1.   Wood Robinson (Complainant) brings this Accusation solely in his official capacity

as the Enforcement Supervisor I of the Contractors' State License Board, Department of

Consumer Affairs.

2.   On or about September 17, 2005, the Registrar of Contractors issued Contractors

License Number 864343 to Olympic Construction Co., Adam Nicolas Conchas, Sole Owner

(Respondent). The Contractor's License was in full force and effect at all times relevant to the

charges brought in this Accusation and will expire on September 30, 2015, unless renewed.

1

LA-RAMA0000096

**JURISDICTION**

3.   This Accusation is brought before the Registrar of Contractors (Registrar) for the Contractors' State License Board, Department of Consumer Affairs, under the authority of the following laws.  All section references are to the Business and Professions Code (Code) unless otherwise indicated.

4.   Code section 118, subdivision (b), provides, in part, that the expiration of a license shall not deprive the Registrar of jurisdiction to proceed with a disciplinary action during the period within which the license may be renewed, restored, reissued or reinstated.  Under Code section 7076.1, the Registrar may reinstate a cancelled license if the licensee pays all of the fees and meets all of the qualifications and requirements for obtaining an original license.

5.   Under Code section 7076.1, the Registrar may reinstate a cancelled license if the licensee pays all of the fees and meets all of the qualifications and requirements for obtaining an original license.

6.   Code section 7076.5 provides, in part, that the inactive status of a license shall not bar any disciplinary action for violating provisions of the Contractors' State License Law (Bus. & Prof. Code, § 7000, et seq.).

7.   Code section 7106.5 provides, in part, that the expiration, cancellation, forfeiture, or suspension of a license by operation of law or by order or decision of the registrar, or a court of law, or the voluntary surrender of the license shall not deprive the registrar of jurisdiction to proceed with any investigation of or action or disciplinary proceeding against the license, or to render a decision suspending or revoking the license.

**STATUTORY PROVISIONS**

8.   Code section 7090 provides, in part, that the Registrar may suspend or revoke any license or registration if the licensee or registrant is guilty of or commits any one or more of the acts or omissions constituting cause for disciplinary action.

9.   Code section 7107 states that "[a]bandonment without legal excuse of any construction project or operation engaged in or undertaken by the licensee as a contractor constitutes a cause for disciplinary action."

2

LA-RAMA0000097

10.    Code section 7108 states:

Diversion of funds or property received for prosecution or completion of a specific construction project or operation, or for a specified purpose in the prosecution or completion of any construction project or operation, or failure substantially to account for the application or use of such funds or property on the construction project or operation for which such funds or property were received constitutes a cause for disciplinary action.

11.    Code section 7109, subdivision (a), states:

A willful departure in any material respect from accepted trade standards for good and workmanlike construction constitutes a cause for disciplinary action, unless the departure was in accordance with plans and specifications prepared by or under the direct supervision of an architect.

12.    Code section 7110 states:

Willful or deliberate disregard and violation of the building laws of the state, or of any political subdivision thereof, or of Section 8505 or 8556 of this code, or of Sections 1689.5 to 1689.8, inclusive, or Sections 1689.10 to 1689.13, inclusive, of the Civil Code, or of the safety laws or labor laws or compensation insurance laws or Unemployment Insurance Code of the state, or violation by any licensee of any provision of the Health and Safety Code or Water Code, relating to the digging, boring, or drilling of water wells, or Article 2 (commencing with Section 4216) of Chapter 3.1 of Division 5 of Title 1 of the Government Code, constitutes a cause for disciplinary action.

13.    Code section 7113 states:

Failure in a material respect on the part of a licensee to complete any construction project or operation for the price stated in the contract for such construction project or operation or in any modification of such contract constitutes a cause for disciplinary action.

14.    Code section 7159.5, states, in part:

This section applies to all home improvement contracts, as defined in Section 7151.2, between an owner or tenant and a contractor, whether a general contractor or a specialty contractor, who is licensed or subject to be licensed pursuant to this chapter with regard to the transaction.

(a) Failure by the licensee or a person subject to be licensed under this chapter, or by his or her agent or salesperson to comply with the following provisions is cause for discipline:

. . .

3

LA-RAMA0000098

1      (3) If a downpayment will be charged, the downpayment may not exceed one thousand dollars ($1,000) or 10 percent of the contract amount, whichever is less.

2     . . .

3      (5) Except for a downpayment, the contractor may neither request nor accept payment that exceeds the value of the work performed or material delivered.

4

5  15.    Code section 7125.4, subdivision (a), states:
    The filing of the exemption certificate prescribed by this article that is false, or

6  the employment of a person subject to coverage under the workers' compensation laws after the filing of an exemption certificate without first filing a Certificate of

7  Workers' Compensation Insurance or Certification of Self-Insurance in accordance with the provisions of this article, or the employment of a person subject to coverage

8  under the workers' compensation laws without maintaining coverage for that person, constitutes cause for disciplinary action.

9

10  ## COST RECOVERY AND RESTITUTION

11  16.    Code section 125.3 provides, in part, that the Registrar may request the administrative

12  law judge to direct a licentiate found to have committed a violation or violations of the licensing

13  act to pay a sum not to exceed the reasonable costs of the investigation and enforcement of the

14  case.

15  17.    Government Code section 11519, subdivision (d), provides, in part, that the Registrar

16  may require restitution of damages suffered as a condition of probation in the event probation is

17  ordered.

18  ## RAMACHANDRAN PROJECT

19  18.    On or about April 2, 2013, Respondent entered into a home improvement contract

20  with Satish Ramachandran for $13,000.00 to convert a garage into a dwelling for the

21  Ramachandran residence located at 889 Santa Rita Avenue, Los Altos, California (Ramachandran

22  Project). Respondent requested and received a $4,500.00 down payment. On or about April 3,

23  2013, Respondent began the Ramachandran project.

24  19.    On or about April 17, 2013, Respondent entered into a separate home improvement

25  contract with Ramachandran for $600.00 to build a storage shed at the Ramachandran residence

26  (collectively, Ramachandran Projects).

27  20.    On or about April 18, 2013, Respondent requested and received $1,000.00 as an

28  advance from Ramachandran for work that had not been completed on the garage.

4

LA-RAMA0000099

1    21.    On or about April 19, 2013, Respondent entered into a separate home improvement

2    contract with Ramachandran for $8,000.00 to convert a patio into a sunroom, remodel the existing

3    kitchen and to install a new kitchen at the Ramachandran residence (collectively, Ramachandran

4    Projects).

5    22.    The total contract price of the Ramachandran Projects was $21,600.00.

6    23.    On or about May 2, 2013, Respondent ceased work on, and abandoned, the

7    Ramachandran Projects without completing them as contracted.  Respondent failed to complete

8    the following items: connect gas line to garage, connect plumbing for garage shower and sink,

9    install garage electrical switches and plugs, install garage exterior motion lights, build the

10    sunroom, apply stucco around garage window, and install garage door casing, window trim, and

11    baseboards.

12    24.    Ramachandran paid Respondent a total of $17,075.00.  Because of Respondent's

13    failure to complete the Ramachandran Projects, Ramachandran will be required to hire another

14    contractor to complete them at a cost substantially in excess of the total contract price.

15    25.    Respondent failed to obtain the required building, electrical, plumbing, and

16    mechanical permits from the City of Los Altos, although Ramachandran paid Respondent

17    $1,000.00 for the permits.

18    26.    On or about January 7, 2013, Respondent filed with the Board a certificate of

19    exemption declaring that it was not required to maintain workers' compensation insurance

20    because it had no employees.  However, Respondent employed several workers on the

21    Ramachandran Projects.  Respondent admitted to a Board investigator that he hired employees for

22    the projects.

23    **FIRST CAUSE FOR DISCIPLINE**

24    **(Abandonment)**

25    27.    Respondent's license is subject to discipline in that on or about May 2, 2013,

26    Respondent abandoned the Ramachandran Projects, without legal excuse, leaving the projects

27    incomplete.  (Bus. & Prof. Code, §7107.)  The underlying facts are more particularly set forth in

28    paragraphs 18 through 25, above.

5

LA-RAMA0000100

1

## SECOND CAUSE FOR DISCIPLINE

2

### (Diversion of Funds)

3        28.     Respondent's license is subject to discipline for diverting funds received for the

4    Ramachandran Projects.  (Bus. & Prof. Code, §7108.)  Specifically, Ramachandran paid

5    Respondent $1,000.00 for obtaining permits for the Ramachandran Projects.  Respondent

6    subsequently abandoned the projects without obtaining permits and without refunding the money

7    paid to him, as more particularly set forth in paragraphs 18 through 25, above.

8

## THIRD CAUSE FOR DISCIPLINE

9

### (Departure from Accepted Trade Standards)

10        29.     Respondent's license is subject to disciplinary action in that Respondent willfully

11    departed from accepted trade standards for good and workmanlike construction on the

12    Ramachandran Projects.  (Bus. & Prof. Code, §7109, subd. (a).)  Specifically, Respondent did not

13    trench the plumbing from the house to the garage with a minimum slope  of ¼ inch for 1 foot and

14    did not install Type L copper plumbing.  The underlying facts are more particularly set forth in

15    paragraphs 18 through 25, above.

16

## FOURTH CAUSE FOR DISCIPLINE

17

### (Building Code Violations:  California Building Code)

18        30.     Respondent's license is subject to discipline in that on the Ramachandran Projects,

19    Respondent deliberately or willfully violated the California Building Code for performing work

20    without the required permits.  (Bus. & Prof. Code, §7110, Cal. Code Regs., tit. 24, §§ R105.1 and

21    R113.1, and Los Altos Mun. Zon. Ord., tit. 14, § 14.010.)  The underlying facts are more

22    particularly set forth in paragraphs 18 through 25, above.

23

## FIFTH CAUSE FOR DISCIPLINE

24

### (Failure to Complete Projects for Contract Price)

25        31.     Respondent's license is subject to discipline in that Respondent failed in a material

26    respect to complete the Ramachandran Projects for the contract price and Ramachandran will be

27    required to spend a sum in excess of the contract price to complete the projects in accordance with

28

6

LA-RAMA0000101

1   the contracts. (Bus. & Prof. Code, §7113.) The underlying facts are more particularly set forth in

2   paragraphs 18 through 25, above.

### SIXTH CAUSE FOR DISCIPLINE

#### (Failure to Maintain Workers' Compensation Coverage)

5      32.   Respondent's license is subject to disciplinary action in that on the Ramachandran

6   Projects, Respondent employed persons subject to workers' compensation law without

7   maintaining insurance coverage for those persons. (Bus. & Prof. Code, §7125.4, subd. (a).) The

8   underlying facts are more particularly set forth in paragraphs 18 through 26, above.

### SEVENTH CAUSE FOR DISCIPLINE

#### (Down Payment Exceeded Statutory Limits)

11      33.   Respondent's license is subject to disciplinary in that Respondent charged a down

12   payment on the Ramachandran Projects that exceeded $1,000.00 and was more that 10 percent of

13   the contract amount. (Bus. & Prof. Code, §7115 and 7159.5, subd. (a)(3).) The underlying facts

14   are more particularly set forth in paragraph 18, above.

### EIGHTH CAUSE FOR DISCIPLINE

#### (Required Payments Exceeded Value of Work and Materials)

17      34.   Respondent's license is subject to disciplinary action in that Respondent required a

18   $1,000.00 advance payment from Ramachandran for the garage that exceeded the value of the

19   work performed and/or materials delivered. (Bus. & Prof. Code, §7159.5, subd. (a)(5).) The

20   underlying facts are more particularly set forth in paragraphs 18 through 24, above.

### OTHER MATTERS

22      35.   Pursuant to Code sections 7097 and 7098, when any license has been suspended or

23   revoked following a hearing, the Registrar may suspend or revoke, without further notice, any

24   additional license issued in the name of the licensee or that for which the licensee furnished the

25   qualifying experience and appearance under the provisions of Code section 7068.

26      36.   Pursuant to Code section 7121, if discipline is imposed on Contractor License

27   Number 864343, Adam Nicolas Conchas shall be prohibited from serving as an officer, director,

28   associate, partner, or qualifying individual of any licensee during the time that discipline is

7

LA-RAMA0000102

1  imposed on that license, and any licensee which employs, elects, or associates Adam Nicolas

2  Conchas in any capacity other than as a non-supervising bona fide employee shall constitute

3  grounds for disciplinary action.

4      37.    Pursuant to Code section 7121.5, if discipline is imposed on Contractor License

5  Number 864343, Adam Nicolas Conchas shall be prohibited from serving as an officer, director,

6  associate, partner, or qualifying individual of any licensee during the time that discipline is

7  imposed on that license, whether or not he had knowledge of or participation in the acts or

8  omissions constituting grounds for discipline, and any licensee which employs, elects, or

9  associates Adam Nicolas Conchas shall be subject to disciplinary action.

10                                   **PRAYER**

11      WHEREFORE, Complainant requests that a hearing be held on the matters alleged in this

12  Accusation, and that following the hearing, the Registrar of Contractors issue a decision:

13      1.    Revoking or suspending Contractors License Number 864343 issued to Olympic

14  Construction Co., Adam Nicolas Conchas, Sole Owner;

15      2.    Prohibiting Adam Nicolas Conchas from serving as an officer, director, associate,

16  partner, or qualifying individual of any licensee during the period that discipline is imposed on

17  license Number 864343, issued to Olympic Construction Co., Adam Nicolas Conchas, Sole

18  Owner;

19      3.    Revoking or suspending any other license for which Adam Nicolas Conchas is

20  furnishing the qualifying experience or appearance;

21      4.    Ordering restitution of all damages according to proof suffered by Satish

22  Ramachandran, as a condition of probation in the event probation is ordered;

23      5.    Ordering restitution of all damages suffered by Satish Ramachandran as a result of

24  Adam Nicolas Conchas' conduct as a contractor, as a condition of restoration of license Number

25  864343, issued to Olympic Construction Co., Adam Nicolas Conchas, Sole Owner;

26      6.    Ordering Olympic Construction Co., Adam Nicolas Conchas, Sole Owner, to pay the

27  Registrar of Contractors his costs in the investigation and enforcement of the case according to

28  proof at the hearing, pursuant to Business and Professions Code section 125.3;

8

LA-RAMA0000103

7. Ordering Olympic Construction Co., Adam Nicolas Conchas, Sole Owner, to provide the Registrar with a listing of all contracting projects in progress and the anticipated completion date of each; and

8. Taking such other and further action as deemed necessary and proper.

DATED: May 14, 2014        Heather Henderson

WOOD ROBINSON
Enforcement Supervisor I
Contractors' State License Board
Department of Consumer Affairs
State of California
*Complainant*

SF2014902105/ 90381034.doc

**FILED**

MAY 1 4 2014

**CSLB DSS**

9

Accusation

LA-RAMA0000104

BEFORE THE
REGISTRAR OF CONTRACTORS
CONTRACTORS STATE LICENSE BOARD
DEPARTMENT OF CONSUMER AFFAIRS
STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Accusation Against:<br><br>**OLYMPIC CONSTRUCTION CO.**<br>**ADAM NICOLAS CONCHAS, Sole Owner**<br>**10300 Reva Court**<br>**San Jose, CA 95127**<br><br>**Contractor's License No. 864343, (Class B and C33)**<br><br>Respondent | CASE NO. N2013-237<br><br>DEFAULT DECISION<br>AND ORDER<br><br>[Gov. Code, § 11520] |

Respondent **OLYMPIC CONSTRUCTION CO.**, having been served with Accusation, Case No. N2013-237, Statement to Respondent, and a Notice of Defense form as provided by Sections 11503 and 11505 of the Government Code; having failed to file a Notice of Defense, the Agency has determined that the respondent is in default. Taking official notice of its own internal records, pursuant to Business and Professions Code section 125.3, it is hereby determined that the reasonable cost for Investigation and Enforcement is $4,588.32 as of June 9, 2014.

This agency will take action on the Accusation and documents on file herein without a hearing as provided by Sections 11505(a) and 11520 of the Government Code and makes the following findings of fact:

FINDINGS OF FACT

1.     On or about May 14, 2014, Accusation, Case No. N2013-237, was filed against **OLYMPIC CONSTRUCTION CO.**, before the Contractors State License Board (Board). A true and correct copy of the Accusation, Case No. N2013-237, is attached as Exhibit "1" to the separate accompanying "Default Decision Evidence Packet" and incorporated by reference as if fully set forth herein.

2.     On or about September 17, 2005, the Contractors State License Board (Board) issued Contractor's License No. **864343** to **OLYMPIC CONSTRUCTION CO.** Said License was in full force and effect at all times relevant to the charges and allegations contained in Accusation, Case No. N2013-237. Contractor's License No. **864343** will expire on September 30, 2015, unless renewed.

Page 1

LA-RAMA0000105

3. On or about May 15, 2014, Respondent was served by certified and first class mail with a true and correct copy of Accusation, Case No. N2013-237, together with copies of all statutorily required documents, at his address of record on file with the Board, which was: 10300 Reva Court, San Jose, CA 95127. A true and correct copy of the Statement to Respondent and Declaration of Service are attached as Exhibit "3" to the separate accompanying "Default Decision Evidence Packet" and incorporated by reference as if fully set forth herein. Service of Accusation, Case No. N2013-237, was effective as a matter of law under the provisions of Government Code section 11505, subdivision (c).

4. Government Code section 11506 states, in pertinent part:

"(c) The respondent shall be entitled to a hearing on the merits if the respondent files a notice of defense, and the notice shall be deemed a specific denial of all parts of the accusation not expressly admitted. Failure to file a notice of defense shall constitute a waiver of respondent's right to a hearing, but the agency in its discretion may nevertheless grant a hearing."

5. Respondent failed to file a Notice of Defense within 15 days after service upon him of a true and correct copy of Accusation, Case No. N2013-237, and has therefore waived his right to a hearing on the merits of the charges and allegations contained therein.

6. Government Code section 11520, subdivision (a), states, in pertinent part:

"If the respondent either fails to file a notice of defense or to appear at the hearing, the agency may take action based upon the respondent's express admissions or upon other evidence and affidavits may be used as evidence without any notice to respondent."

## DETERMINATION OF ISSUES

7. Pursuant to its authority under California Government Code section 11520, and based on the relevant evidence before it as contained in the Default Decision Evidence Packet, the Board hereby finds, by clear and convincing evidence, that the charges and allegations contained in Accusation, Case No. N2013-237, Business and Professions Code sections 7107, 7108, 7109(a), 7110, 7113, 7115, 7125.4(a), 7159.5(a)(3), 7159.5(a)(5), and the Findings of Fact contained in paragraphs 1 - 6 above, and each of them, separately and severally, are true and correct.

LA-RAMA0000106

ORDER

IT IS SO ORDERED THAT:

License Number B64343 issued to **OLYMPIC CONSTRUCTION CO.**, is revoked.

IT IS FURTHER ORDERED that pursuant to Section 7102 of the Business and Professions Code and Section 870 of the Code of Regulations, title 16, Respondent **OLYMPIC CONSTRUCTION CO.**, License No. **664343**, shall not apply for reissuance or reinstatement of said license for <u>one</u> year(s) from the effective date of this Decision.

IT IS FURTHER ORDERED that Respondent shall pay the investigative costs in the amount of $4,588.32, prior to issuance of a new or reinstated license pursuant to Business and Professions Code section 125.3.

IT IS FURTHER ORDERED that Respondent shall pay restitution in the amount of $40,316.00.  This amount is to be paid prior to issuance of a new or reinstated license pursuant to Government Code section 11519, subdivision (d).

IT IS THE responsibility of the respondents, named in this Decision, to read and follow the terms and conditions of the Order. Proof of payments of restitution, and payments for the Cost of Investigation and Enforcement if ordered, are to be sent to CSLB, Sacramento Case Management, Post Office Box 26888, Sacramento, CA 95826.

Pursuant to Government Code section 11520, subdivision (c), Respondent may serve a written motion requesting that the Decision be vacated and stating the grounds relied on within seven (7) days after service of the Decision on Respondent. The agency in its discretion may vacate the Decision and grant a hearing on a showing of good cause, as defined in the statute.

This Decision shall become effective on <u>July 29, 2014.</u>

IT IS SO ORDERED <u>June 26, 2014.</u>

_____
Stephen P. Sands
Registrar of Contractors

Page 3

# Exhibit B



**Community Development Department**
**One North San Antonio Road**
**Los Altos, California 94022**

June 25, 2013

Satish Ramachandran
889 Santa Rita
Los Altos, CA 94022

RE:   STOP WORK ORDER FOR SECOND LIVING UNIT  - 889 SANTA RITA AVENUE

Dear Mr. Raamachandran:

We appreciate that you have responded to the Stop Work Order for the second living unit (accessory structure) and are willing to resolve this issue. According to available City records, the accessory structure is currently permitted for a garage use only , and its conversion into a second living unit is unpermitted. Furthermore, Section 14.14.010 of the Municipal Zoning Ordinance only authorizes a second living unit on a lot with a minimum lot size of 15,000 square feet. Unfortunately, the subject property's lot size is under 15,000 square feet; therefore, a second living unit is not permitted on the site.

As a result, the Planning Division must request the following:

- Elimination of the Second Living Unit: - The unpermitted conversion of the garage into a second living unit shall be removed within 30-days by July 25, 2013. This requires the removal of the kitchen from the accessory structure, and the re-establishment of one covered parking space with a minimum interior dimension of nine feet by eighteen feet.

If you wish to retain any element beyond the kitchen and one parking space, planning staff requires a building permit submittal with architectural/construction level drawings be submitted for the accessory structure and site within 30-days by July 25, 3013. Your decision to improve the accessory structure (garage) will not allow a delay of the demolition of the kitchen and immediate re-installation of the one covered parking space, and we will expect demolition to be completed by July 25, 2013.

Please call the Building Division for an inspection after the demolition has been completed.  If there are any questions, please contact me by email at sgallegos@losaltosca.gov or by phone at (650)947-2641.

Sincerely,

Sean K. Gallegos
Assistant Planner

CC:   Building Division