UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SATISH RAMACHANDRAN,

Plaintiff,

v.

CITY OF LOS ALTOS, et al.,

Defendants.

Case No.  18-cv-01223-VKD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 154

Plaintiff Satish Ramachandran sues defendants City of Los Altos ("Los Altos") and Los Altos employees Kirk Ballard, David Kornfield, and Christopher Jordan (collectively, "the individual defendants") for violation of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983.  Dkt. No. 153.  Defendants now move for summary judgment on all of Mr. Ramachandran's claims.  Dkt. No. 154.

All parties who have appeared have consented to magistrate judge jurisdiction.  Dkt. Nos. 11, 22, 78.  Having considered the parties' briefs and the arguments made at the hearing on this motion, for the following reasons, the Court grants in part and denies in part defendants' motion for summary judgment.  Specifically, the Court grants defendants' motion as to Mr. Ramachandran's Fourteenth Amendment claims against the individual defendants and Los Altos, but denies the motion as to his First Amendment claims; except, however, the Court finds that the First Amendment claim as to Mr. Kornfield is barred by the statute of limitations.  The Court concludes that Messrs. Ballard and Jordan are not entitled to qualified immunity with respect to Mr. Ramachandran's First Amendment claim.

United States District Court
Northern District of California

I. **BACKGROUND**

A. **The Parties**

Plaintiff Satish Ramachandran moved to the United States from India in 1986.  Dkt. No. 165-3 ¶ 2.  He has owned a home in Los Altos, California since 1993.  *Id.* ¶ 3.

Defendant Los Altos has a Community Development Department, which includes a Building Division and a Planning Division.  *Id.* ¶¶ 4-5; Dkt. No. 155-4 at 37:17–38:12.  Defendant Kirk Ballard is the Building Official of the Building Division, a position he has held since 2000.  Mr. Ballard is responsible for supervising the processing, plan checking, and inspection of all construction projects in Los Altos.  Dkt. No. 155-2 at 47:13-24, 49:6-18.  Defendant David Kornfield was the Planning Services Manager for the Planning Division from 2010 to 2018.  Dkt. No. 155-3 at 76:17-21, 85:3-20.  Mr. Kornfield's responsibilities included providing support to Los Altos's planning, historical, and environmental commissions, supervising associate planners, and occasionally assisting at the public planning counter.  *Id.* at 85:24–86:14.  Defendant Christopher Jordan is the Los Altos City Manager.  Dkt. No. 154 at 5; Dkt. No. 165-3, Ex. 22 at ECF p. 174; *see also* Dkt. No. 153 ¶ 7.

B. **Mr. Ramachandran's Property Improvements**

Beginning in 2013, Mr. Ramachandran sought to make improvements to his Los Altos property and began communicating with employees of the Community Development Department for that purpose.  Dkt. No. 165-3 ¶¶ 4-6; Dkt. No. 155-4 at 37:17–38:12.  In the spring of that year, after initial communications with Messrs. Kornfield and Ballard, Mr. Ramachandran engaged contractor Adam Conchas to construct certain improvements and obtain the necessary permits from Los Altos.  Dkt. No. 165-3 ¶¶ 6-7.  Apparently, Mr. Conchas failed to obtain the necessary permits and abandoned the work unfinished.  *Id.* ¶ 8; Dkt. No. 166, Ex. 3-4.

On May 8, 2013, Mr. Conchas filed a complaint with Los Altos, stating that Mr. Ramachandran was "converting garage space to living space with bathroom and kitchen including gas-line" without permits (presumably, the permits Mr. Conchas was supposed to have obtained on Mr. Ramachandran's behalf).  Dkt. No. 166, Ex. 5 at Ex. A; Dkt. No. 166, Ex. 3 ¶ 25; Dkt. No. 166, Ex. 4 ¶ 7; *see also* Dkt. No. 165-3 ¶¶ 11, Ex. 6.  Following this complaint, Greg Anderson, an

employee of the Los Altos Community Development Department, visited Mr. Ramachandran's home.  Dkt. No. 165-3 ¶ 15.  Mr. Ramachandran says Mr. Anderson used a "hostile tone" and made derogatory remarks, including telling him to "go back to India."  *Id.* ¶ 16.  On July 12, 2013, Mr. Ramachandran complained to Los Altos officials about Mr. Anderson's conduct, but it is unclear what action, if any, Los Altos took in response to that complaint.  *Id.* ¶¶ 15-18.  Mr. Ramachandran says that after he complained about Mr. Anderson, Mr. Ballard told Mr. Ramachandran that Mr. Anderson was a "good employee" and attempted to persuade Mr. Ramachandran that his complaint was "misguided."  *Id.* ¶¶ 19-20.  On July 17, 2013, Mr. Ramachandran then filed a formal complaint alleging bias, discrimination, misconduct, and abuse by both Messrs. Ballard and Anderson.  *Id.* ¶ 24, Ex. 6.  The record does not reflect the disposition of this complaint either.

Mr. Ramachandran has endeavored to make improvements to several aspects of his property.  *Id.* ¶ 4.  Since 2013, he says Los Altos and its employees treated him unfairly with respect to his planned improvements.  For example, Mr. Ramachandran received conflicting statements from Los Altos employees, including Messrs. Kornfield and Ballard, concerning whether permits were required for his improvement projects and whether his improvements complied with the Los Altos Municipal Code ("LAMC").  *Id.* ¶ 5-7, 13, 19, 25; Dkt. No. 155-4 Ex. 7, at ECF p. 35.  He says he was required to pay administrative fines before being allowed to collect permits for approved improvement projects.  Dkt. No. 165-3 ¶ 19, 28.  He also says that Los Altos staff repeatedly made arbitrary demands and changes to the requirements for his improvement projects and threatened him with additional fines and penalties when he protested.  *Id.* ¶¶ 30-32.  Mr. Ramachandran asserts that Los Altos staff made "baseless and unreasonable demands" that "are not part of the [LAMC]" and did not make the same demands of his neighbors, Pamela and James Jacobs, or several other homeowners.  *Id.* ¶ 32, Ex. 7.  He also asserts that Los Altos employees, including Messrs. Ballard and Kornfield, attempted to use inspections as pretexts for finding code violations.  *Id.* ¶¶ 36, 56-57, 59-62, Ex. 14.  Defendants generally dispute Mr. Ramachandran's characterizations of these events.  *See* Dkt. No. 154 at 2–4.

C.      **The Jacobses' Property Improvements**

During this same period, Mr. Ramachandran clashed repeatedly with his neighbors, the Jacobses, and Los Altos over improvements each sought to make on their respective properties. For example, in 2013, Mr. Ramachandran erected a shed in his backyard, prompting the Jacobses to complain to Los Altos officials.  Dkt. No. 165-3 ¶¶ 4, 21-23, Ex. 5.  For his part, Mr. Ramachandran complained to Los Altos officials in 2013, 2017 and 2018 about alleged code violations and purported illegal improvements on the Jacobses' property.  *Id.* ¶¶ 29, 51, 54, 65-67, Exs. 13, 16, 17; Dkt. No. 155-7 at RAMACHANDRAN 001835–36.  According to Mr. Ramachandran, Los Altos approved the Jacobses' non-compliant improvement projects or declined to take enforcement action with respect to code violations for those projects.  Dkt. No. 165-3 ¶¶ 51, 54, 65-67, Ex. 13, 17; Dkt. No. 155-7 at RAMACHANDRAN 001835–36. Defendants do not dispute that Los Altos approved the Jacobses' projects but disagree that the Jacobses' projects were non-compliant or otherwise improper.  Dkt. No. 155-7 at RAMACHANDRAN 001835–36; Dkt. No. 155-4, Exs. 23 and 24.

D.      **Post-Complaint Events**

Mr. Ramachandran filed this action on February 25, 2018.  Dkt. No. 1.  Approximately four months later, on July 3, 2018, the Jacobses' attorney contacted Christopher Diaz, the Los Altos City Attorney, demanding that Los Altos address a list of purported violations on Mr. Ramachandran's property and asking Los Altos to "[c]onduct an immediate inspection (with assistance of police if need be)."  Dkt. No. 165-3 ¶ 68, Ex. 18; Dkt. No. 155-3, Ex. 7.  Relying principally on the existence of communications between counsel charged with prosecuting violations on behalf of Los Altos and defendants' counsel in this action, Mr. Ramachandran asserts that defendants coordinated their actions to manufacture a basis for Los Altos to obtain an inspection warrant without cause as a pretext to examine Mr. Ramachandran's property.  Dkt. No. 165-3 ¶ 69; *see also* Dkt. No. 165 at 12–13 (describing emails from defendants' privilege log between defense counsel, another attorney from defense counsel's firm tasked with obtaining the inspection warrant and later prosecuting Mr. Ramachandran, Mr. Diaz, and other Los Altos employees between July 24, 2018 and September 10, 2018); Dkt. No. 165-2, Ex. 1.  Defendants do

United States District Court
Northern District of California

4

1   not dispute that they sought an inspection warrant after receiving the Jacobses' 2018 complaint,

2   and they point out that they ultimately found code violations on Mr. Ramachandran's property.

3   *See* Dkt. No. 167; Dkt. No. 197 at 5:18–6:7, 7:22–8:10.

4          On July 18, 2018, Mr. Ramachandran filed a first amended complaint naming additional

5   defendants in this action.  Dkt. No. 34.  Shortly thereafter, on August 31, 2018, Los Altos

6   successfully obtained an inspection warrant from the Superior Court for the County of Santa Clara

7   for the inspection of Mr. Ramachandran's property.  The warrant application was made on an ex

8   parte basis.  Dkt. No. 166, Ex. 6 at ECF p. 64; Dkt. No. 165-3 ¶ 70.  Los Altos relied on a

9   declaration from Mr. Ballard in support of the warrant application, and Mr. Jordan approved the

10  application.  Dkt. No. 165-1, Ex. 3 at 63:14–65:13, 74:12–75:3; Dkt. No. 166, Exs. 5-6; Dkt. No.

11  165-3 ¶¶ 70, 72.  According to Mr. Ramachandran, Mr. Ballard made false or misleading

12  statements in and omitted important facts from his declaration.  Dkt. No. 165-3 ¶¶ 9-12, 70-72.

13  Mr. Ballard relied in part on Mr. Conchas's complaint to Los Altos in 2013—five years earlier.

14  Dkt. No. 166, Ex. 5 ¶¶ 2, 13.  Mr. Ballard further stated in his declaration that he observed that "a

15  cooking range, microwave, dishwasher, stacked washer dryer, refrigerator, shower, toilet and sink

16  had all been installed in the detached garage, which verified the allegations in [Mr. Conchas]'s

17  complaint."  *Id.* ¶ 4.  Additionally, Mr. Ballard attested that Mr. Ramachandran had done

18  construction work within his home without the necessary permits and was seeking to rent out an

19  illegal second living unit on his property.  *Id.* ¶¶ 5, 10, 12, 13.  Defendants do not dispute that Mr.

20  Ballard's declaration contained some errors and omitted some information, but they maintain

21  those errors and omissions were not material, as an inspection was justified in any event.  *See* Dkt.

22  No. 167 at 5–6; Dkt. No. 197 at 5:18–6:7.

23         Based on Mr. Ballard's declaration, the Santa Clara County Superior Court issued the

24  inspection warrant.  Dkt. No. 166, Ex. 6 at ECF pp. 60–62.  The warrant was executed on

25  September 1, 2018, and based on that inspection, Mr. Ballard identified numerous purported code

26  violations on Mr. Ramachandran's property.  Dkt. No. 165-3 ¶¶ 73-74, Ex. 20.  Mr.

27  Ramachandran disputes the existence of any violations.  *Id.* ¶¶ 33, 82-83.

28         On September 6, 2018, Los Altos employees posted six sets of notices ordering Mr.

United States District Court
Northern District of California

5

1   Ramachandran's tenant, who occupied the converted garage, to vacate the property.  *Id.* ¶ 75.  The

2   notices were signed by Mr. Ballard.  *Id.* ¶ 76.  Los Altos employees continued to post notices to

3   vacate and to stop work on the property every day for the next week.  *Id.* ¶ 77.  On September 11,

4   2018, Mr. Ramachandran removed one of the notices to provide to his attorney.  *Id.* ¶ 78.  He was

5   immediately stopped by a police officer who had been watching the property.  *Id.*  The officer

6   cited Mr. Ramachandran with a misdemeanor for removing the notice, despite the fact that five

7   other notices remained posted.  *Id.*; Dkt. No. 155-2, Ex. 12 at ECF pp. 356–57.  As of the date of

8   defendants' motion, Los Altos's misdemeanor prosecution against Mr. Ramachandran remains

9   pending.  Dkt. No. 165-3 ¶¶ 81; Dkt. No. 155-2, Ex. 12 at ECF pp. 350–51.

10          **E.     Mr. Ramachandran's Claims against Defendants**

11          The operative fourth amended complaint, filed on April 27, 2020, asserts the following

12   claims for violation of his constitutional rights under 42 U.S.C. § 1983: (1) violation of Mr.

13   Ramachandran's First Amendment rights against Messrs. Ballard, Kornfield, and Jordan; (2)

14   violation of Mr. Ramachandran's Fourteenth Amendment right to equal protection against Messrs.

15   Ballard, Kornfield, and Jordan; (3) municipal liability as to Los Altos under *Monell v. Dep't of*

16   *Social Servs. of the City of New York*, 436 U.S. 658 (1978) for violation of Mr. Ramachandran's

17   Fourteenth Amendment rights, based on a longstanding custom or practice; and (4) municipal

18   liability as to Los Altos under *Monell* for violation of Mr. Ramachandran's First and Fourteenth

19   Amendment rights, based on Messrs. Ballard, Kornfield, and Jordan's final decision making or

20   final policymaking authority.  Dkt. No. 153.

21          Defendants move for summary judgment on all four claims.

22   **II.     LEGAL STANDARD**

23          A party may move for summary judgment on a "claim or defense" or "part of . . . a claim

24   or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate

25   discovery, there is no genuine issue as to any material facts and the moving party is entitled to

26   judgment as a matter of law.  *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

27   Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*,

28   477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient

United States District Court
Northern District of California

1    evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

2         A party seeking summary judgment bears the initial burden of informing the court of the

3    basis for its motion and of identifying those portions of the pleadings and discovery responses that

4    demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Where the

5    moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

6    reasonable trier of fact could find other than for the moving party.  *S. Calif. Gas. Co. v. City of*

7    *Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

8         On an issue where the nonmoving party will bear the burden of proof at trial, the moving

9    party may discharge its burden of production either (1) by "produc[ing] evidence negating an

10   essential element of the nonmoving party's case" or (2) after suitable discovery, by "show[ing]

11   that the nonmoving party does not have enough evidence of an essential element of its claim or

12   defense to discharge its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co.,*

13   *Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324–25.

14        Once the moving party meets its initial burden, the opposing party must then set forth

15   specific facts showing that there is some genuine issue for trial in order to defeat the motion.  *See*

16   Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.  "A party opposing summary judgment may not

17   simply question the credibility of the movant to foreclose summary judgment."  *Anderson*, 477

18   U.S. at 254.  "Instead, the non-moving party must go beyond the pleadings and by its own

19   evidence set forth specific facts showing that there is a genuine issue for trial."  *Far Out Prods.,*

20   *Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted).  The non-

21   moving party must produce "specific evidence, through affidavits or admissible discovery

22   material, to show that the dispute exists."  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th

23   Cir. 1991).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to

24   raise a genuine issue of material fact to defeat summary judgment.  *Thornhill Publ'g Co., Inc. v.*

25   *Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

26   **III.    DISCUSSION**

27        Defendants move for summary judgment on all four of Mr. Ramachandran's claims.  They

28   argue that Mr. Ramachandran's First Amendment claim against Messrs. Ballard, Kornfield, and

United States District Court
Northern District of California

Jordan is barred by the statute of limitations and that Mr. Ramachandran cannot show that the

individual defendants retaliated against him because of any constitutionally protected conduct.

Similarly, defendants contend that Mr. Ramachandran's Fourteenth Amendment claim against

Messrs. Ballard, Kornfield, and Jordan is barred by the statute of limitations and that Mr.

Ramachandran cannot show that the individual defendants intentionally discriminated against non-

white homeowners.  Defendants also argue that Messrs. Ballard, Kornfield, and Jordan are entitled

to qualified immunity.  Last, defendants argue that Mr. Ramachandran cannot prevail on his

*Monell* claims against Los Altos because no constitutional violation occurred and because Mr.

Ramachandran provides no evidence of a longstanding custom or practice of discrimination.

Defendants make a number of procedural and evidentiary objections to Mr.

Ramachandran's submissions, and both parties ask the Court to take judicial notice of several

matters.  The Court first addresses defendants' procedural and evidentiary objections and the

parties' requests for judicial notice, then considers the merits of defendants' summary judgment

motion.

### A. Procedural and Evidentiary Objections

#### 1. Defendants' objection to length of Mr. Ramachandran's opposition

Defendants object that Mr. Ramachandran's opposition brief exceeds the page limits set

under Civil Local Rule 7-4(b).  Dkt. No. 167 at 1, 3–4.  Mr. Ramachandran's opposition brief

consists of a caption (1 page), tables of contents and authorities (4 pages), and a memorandum of

points and authorities (25 pages, with only counsel's signatures appearing on the 26th page).  Dkt.

No. 165.  Defendants ask the Court to disregard the last six pages of Mr. Ramachandran's brief.

Defendants are mistaken that tables of contents and authorities count toward Civil Local

Rule 7-4(b)'s page limits.  They do not.  *See, e.g.*, *Chamberlin v. Hartog, Baer & Hand, APC*, No.

19-CV-08243-JCS, 2020 WL 2322884, at *4 n.6 (N.D. Cal. May 11, 2020) ("While the page

numbering of Christopher Chamberlin's opposition brief runs to 33, nine of those pages consist of

a cover page, table of contents, and table of authorities, which do not count against the twenty-five

page limit set by Civil Local Rule 7-4(b)."); *Garcia v. Harley-Davidson Motor Co., Inc.*, No. 19-

CV-02054-JCS, 2019 WL 6050768, at *8 n.8 (N.D. Cal. Nov. 15, 2019) ("Garcia's opposition

1  exceeds the twenty-five page limit imposed by Civil Local Rule 7-3(a).  The violation is not as

2  severe as might be suggested by the number '34' on the final page of the brief, because the text of

3  Garcia's argument is contained only on the pages numbered from 8 through 33 . . . .").

4      As Mr. Ramachandran's opposition brief substantially complies with the page limit

5  requirements, the Court will not disregard any portion of the brief.

6              **2.    Defendants' objections to Mr. Ramachandran's evidence**

7      Defendants object to paragraphs 88-90 and Exhibit 24 of Mr. Ramachandran's declaration

8  on several grounds.  Dkt. No. 167 at 1–3.  Exhibit 24 is a compilation of documents Mr.

9  Ramachandran says he and another person obtained through Public Records Act ("PRA") requests

10 pursuant to California Government Code § 6253 and through discovery in a separate state court

11 action against the Jacobses.  Dkt. No. 165-3 ¶¶ 88-90, Ex. 24.  In paragraphs 88-89 of his

12 declaration, Mr. Ramachandran describes the source of the documents in Exhibit 24 and

13 characterizes those documents as "establish[ing] a pattern of demands, prohibitions, requirements

14 and penalties regarding non-legal structures and legal, non-conforming accessory structures" that

15 disproportionately impacted 14 non-white homeowners compared to white homeowners.  *Id.* ¶¶

16 88-89.  In paragraph 90 of his declaration, Mr. Ramachandran asserts that 14 Los Altos

17 homeowners whose communications with Los Altos are supposedly reflected in Exhibit 24 are

18 "non-Caucasian."  *Id.* ¶ 90.  In opposing defendants' motion for summary judgment, Mr.

19 Ramachandran relies on these materials as evidence of Los Altos's custom and practice of

20 enforcing the LAMC more frequently against non-white homeowners than against white

21 homeowners.  Dkt. No. 165 at 4.  For the reasons explained below, the Court overrules

22 defendants' expert testimony objection to paragraphs 88-90.  The Court overrules the lack of

23 foundation objection to paragraphs 88-90 with respect to Mr. Ramachandran's knowledge of the

24 source of the documents in Exhibit 24, but sustains defendants' objection as to the remainder of

25 the assertions contained in paragraphs 88-90.  Defendants' hearsay objection to Exhibit 24 is

26 sustained as to documents authored by homeowners, but overruled as to documents authored by

27 Los Altos employees.

28      First, invoking Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

United States District Court
Northern District of California

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589–91 (1993), defendants contend that paragraphs 88-90 of Mr. Ramachandran's declaration are inadmissible because the assertions they contain are "not relevant to the facts of this case." Dkt. No. 167 at 2. Rule 702 and *Daubert* concern the admissibility of expert testimony. Defendants do not explain how Mr. Ramachandran's declaration implicates this authority, as he is not an expert witness but a fact witness. The Court infers that defendants object to Mr. Ramachandran's declaration to the extent he purports to provide an opinion that only an expert witness is qualified to provide. The Court agrees that Mr. Ramachandran may not offer expert testimony. However, the Court believes that defendants' objections to paragraphs 88-90 of the Mr. Ramachandran's declaration are best addressed with reference to the Federal Rules of Evidence that govern testimony of lay witnesses, as discussed below.

Second, defendants argue that paragraphs 88-90 of the declaration are inadmissible because Mr. Ramachandran lacks personal knowledge of the matters to which those paragraphs refer, including the contents of Exhibit 24. Dkt. No. 167 at 3. Rule 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The Court considers defendants' objection as it applies to the different assertions in Mr. Ramachandran's declaration. To the extent Mr. Ramachandran testifies in paragraph 88 of his declaration that the documents included in Exhibit 24 were among those defendants produced in response to a PRA request or in response to a discovery request Mr. Ramachandran served in a state court action against the Jacobses, the Court finds that Mr. Ramachandran's own testimony supports a finding that he has personal knowledge of the source of the documents included in Exhibit 24. Dkt. No. 165-3 ¶ 88. However, Mr. Ramachandran offers no evidence suggesting that he has personal knowledge of any of the other matters asserted in paragraphs 88-90 of his declaration. For example, he does not demonstrate personal knowledge of the actions that Los Altos and its employees took or did not take with respect to any particular homeowner. And he does not demonstrate personal knowledge of the events he purports to summarize and characterize in paragraph 89 or any basis whatsoever to characterize those events as reflecting "a pattern of demands, prohibitions, requirements and

10

penalties regarding non-legal structures and legal, non-conforming accessory structures." *Id.* ¶¶ 88-89.  With respect to paragraph 90, Mr. Ramachandran asserts that he "took steps to investigate the ethnicity of the 14 homeowners identified in Exhibit 24 . . . and confirmed their non-Caucasian ethnicity," but he provides no explanation of what those steps involved or how he knows (or is qualified to determine) that these homeowners are "non-Caucasian." *Id.* ¶ 90.  Accordingly, the Court sustains defendants' objections to the admissibility of paragraphs 88-90, except for Mr. Ramachandran's testimony regarding the source of the documents attached as Exhibit 24.

Third, defendants object to the documents attached to Mr. Ramachandran's declaration as Exhibit 24 as inadmissible hearsay.  Dkt. No. 167 at 2–3.[1]  With respect to those documents within Exhibit 24 that constitute non-party homeowners' communications with Los Altos employees, the Court agrees that the contents of those communications are inadmissible.  *See* Dkt. No. 165-3, Ex. 24 at ECF pp. 216, 221, 223–24, 241–42, 247, 249.  Mr. Ramachandran attempts to rely on these communications as evidence that Los Altos disproportionately subjected non-white homeowners to enforcement actions for code violations.  Such reliance requires the Court to accept the truth of the assertions made in the communications.  While the *existence* of such communications may be admissible as evidence of a public record under Rule 803(8) or as evidence of a regularly conducted activity under Rule 803(6), the *substance of the assertions* made by the homeowners in their communications to Los Altos is inadmissible hearsay to which no exception applies.  *See, e.g.*, *Muniz v. United Parcel Serv.*, 738 F.3d 214, 222–23 (9th Cir. 2013) (spreadsheet of paralegal's hours and attorney's declaration in support of fees motion attaching spreadsheet and stating that he watched the paralegal reconstruct her hours were inadmissible as hearsay).  With respect to those documents within Exhibit 24 that constitute communications or reports by Los Altos employees, the Court understands that defendants concede these documents are admissible as public records under Rule 803(8) or as business records under Rule 803(6).  Dkt. No. 197 at 19:9-21.  Arguably, some of these documents also are admissible as statements of an opposing party under Rule 801(d)(2).  Accordingly, the Court sustains defendants' hearsay objection to the

---

[1] To the extent, defendants object that these documents also are not relevant, the Court addresses relevance in its discussion of the merits below.  *See infra* Section III.D.2.

United States District Court
Northern District of California

1    admissibility of the contents of the non-party communications within Exhibit 24 but overrules the

2    objection as to those reports and communications authored by Los Altos employees.

3        **B.      Requests for Judicial Notice**

4        Defendants ask the Court to take judicial notice of the Notice of Entry of Judgment and

5    Judgment issued in *James Leo Jacobs and Pamela Lawrie Jacobs et al. v. Satish Ramachandran*

6    *et al.*, County of Santa Clara Superior Court Case No. 17CV312418.  Dkt. No. 156.  Mr.

7    Ramachandran asks the Court to take judicial notice of seven items: (1) the May 11, 2020 Santa

8    Clara County Assessor's Office Public Information for APN 167-18-060 (889 Santa Rita Avenue,

9    Los Altos), indicating that Mr. Ramachandran's property consists of 15,049 square feet; (2) the

10   2010 Bay Area Census for the City of Los Altos showing that of Los Altos's population of 28,976

11   people, 70.6% are White and 23.5% are Asian; (3) the State of California Department of

12   Consumer Affairs Accusation against Olympic Construction Co., Adam Nicholas Conchas, Sole

13   Owner before the Contractor's State License Board in Case Number N2013-237; (4) the

14   Contractor's State License Board's Default Decision and Order against Olympic Construction Co.,

15   Adam Nicholas Conchas, Sole Owner in Case Number N2013-237; (5) the Declaration of Kirk

16   Ballard Re Application for Inspection Warrant Re 889 Santa Rita Avenue, Los Altos, California

17   94022 [APN 167-18-060], filed in support of a warrant application in the Superior Court of the

18   County of Santa; (6) the Inspection Warrant for 889 Santa Rita Avenue, Los Altos, CA 94022

19   [APN 167-18-060], the Application for Inspection Warrant and Memorandum of Points and

20   Authorities, and the Declaration of Christina Hickey in the Superior Court of the County of Santa

21   Clara in the matter of Warrant No. B15034; and (7) a transcript of the April 7, 2020 proceedings in

22   this action.  Dkt. No. 166.

23       A court may take notice of public records, but not of disputed facts stated in public

24   records.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018) (citing *Lee v. City of*

25   *Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

26       The parties do not object to each other's requests for judicial notice.  Having reviewed the

27   parties' submissions, the Court grants defendants' request for judicial notice in its entirety and

28   grants Mr. Ramachandran's request for judicial notice as to the first six documents.  The first two

United States District Court
Northern District of California

United States District Court
Northern District of California

1   documents are publicly available government records from the County of Santa Clara and the

2   California state government, and the remaining originate from proceedings before this Court and

3   other courts.  Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to

4   reasonable dispute because it . . . can be accurately and readily determined from sources whose

5   accuracy cannot reasonably be questioned."); *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d

6   758, 763 n.5 (9th Cir. 2018) (taking "judicial notice of government documents, court filings, press

7   releases, and undisputed matters of public record").  With respect to Mr. Ramachandran's seventh

8   request for judicial notice as to the transcript of the April 7, 2020 proceedings in this action, that

9   document has been filed on the docket of this action and is therefore already part of the record of

10  this case, thus there is no need for the Court separately to take judicial notice of it.  Dkt. No. 146.

### C.   First Claim: Violation of First Amendment Against Individual Defendants

12      Mr. Ramachandran alleges that he engaged in constitutionally protected activity:

13  complaining to Los Altos and its employees about discriminatory treatment, and filing and

14  prosecuting this action.  Dkt. No. 153 ¶ 87.  He says that Messrs. Ballard, Kornfield, and Jordan

15  retaliated against him as follows: "(i) Kornfield and Ballard [made] permitting and code

16  enforcement decisions aimed at infringing on Ramachandran's property rights in response to

17  Plaintiff's complaints against agents and employees of the Building and Planning Departments;

18  and (ii) Defendants Ballard, Kornfield, and Jordan fabricated purported 'code violations' at [Mr.

19  Ramachandran's property] in response to Plaintiff's complaints and lawsuit."  *Id.* ¶ 88.

20      Defendants move for summary judgment on this claim against the individual defendants on

21  four grounds: (1) the statute of limitations bars Mr. Ramachandran's claim for any alleged acts

22  occurring before February 25, 2016; (2) Mr. Ramachandran cannot show that the conduct of the

23  individual defendants was substantially motivated by Mr. Ramachandran's constitutionally

24  protected conduct; (3) the individual defendants would have taken the same actions in the absence

25  of Mr. Ramachandran's protected conduct; and (4) the individual defendants are entitled to

26  protection under the qualified immunity doctrine.  Dkt. No. 154 at 9–15.  The Court addresses

27  each argument in turn.

28

United States District Court
Northern District of California

### 1. Statute of limitations

Defendants argue that the two-year statute of limitations bars Mr. Ramachandran's First Amendment claim to the extent the claim relies on conduct occurring before February 25, 2016.[2] Dkt. No. 154 at 9–11. Mr. Ramachandran does not dispute defendants' application of the statute of limitations and agrees that his First Amendment claim against the individual defendants must be limited to retaliatory conduct occurring on or after February 25, 2016. Dkt. No. 165 at 18 n.6. The Court finds no basis to conclude otherwise.

### 2. Merits of First Amendment claim

To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that (1) he engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). Once a plaintiff makes the required showing, the burden shifts to the defendant to show that he "would have taken the same action even in the absence of the protected conduct." *O'Brien*, 818. F.3d at 932 (internal quotation marks omitted).

Mr. Ramachandran contends that the constitutionally protected activity at issue is the filing of this action in February 2018 and his subsequent prosecution of the action. Dkt. No. 165 at 19–20. He says that defendants retaliated against him in several ways. As to Mr. Ballard, Mr. Ramachandran says Mr. Ballard knowingly submitted a declaration in support of an inspection warrant for Mr. Ramachandran's property that contained false and misleading statements, made false claims of purported code violations supposedly discovered during the inspection, and caused numerous redundant notices of those non-existent violations to be posted on Mr. Ramachandran's property. After Mr. Ramachandran removed one of these notices, Los Altos initiated a criminal prosecution against him. *See id.* at 19–20, 21. As to Mr. Jordan, Mr. Ramachandran says that he participated in planning the inspection warrant application, and he provides evidence that Mr.

---

[2] *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) ("It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims, and in California, that limitations period is two years.") (internal citations omitted).

14

United States District Court
Northern District of California

1    Jordan authorized the application.  *Id.* at 12–13, 19–20; Dkt. No. 165-3 ¶ 69; Dkt. No. 197 at

2    23:12–24:14.  As to Mr. Kornfield, the parties agree that he left employment with Los Altos in

3    2018 and did not participate in the events leading up to the inspection warrant application and its

4    execution, or in any events thereafter.  Dkt. No. 167 at 5; Dkt. No. 197 at 23:2-11.  Accordingly,

5    the Court grants defendants' motion for summary judgment with respect to the First Amendment

6    claim against Mr. Kornfield.

7           For purposes of their motion, defendants do not dispute that Mr. Ramachandran engaged in

8    constitutionally protected activity, and they do not debate whether the acts of which Mr.

9    Ramachandran complains occurred.  *See* Dkt. No. 167 at 5–6.  Rather, defendants argue that Mr.

10   Ramachandran cannot show that his filing and prosecution of this action was a substantial or

11   motivating factor for Messrs. Ballard's and Jordan's alleged actions with respect to procuring and

12   executing the inspection warrant, the subsequent identification of purported violations, the posting

13   of notices, and Mr. Ramachandran's criminal prosecution for removing a notice.  Dkt. No. 154 at

14   11–14.

15          Both parties acknowledge that whether and to what extent the suppression of protected

16   activity is a factor in defendants' conduct may be shown through direct or circumstantial evidence.

17   *Id.* at 11–12; Dkt. No. 165 at 14; *Mendocino Envt'l Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301–

18   02 (9th Cir. 1999).  The Ninth Circuit has recognized three ways in which a retaliatory motive

19   may be inferred: (1) proximity in time between the protected activity and the retaliatory acts; (2)

20   defendant's express opposition to the protected activity; or (3) the falsity or pretext of defendant's

21   proffered explanations.  *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003).  These are

22   not the only ways in which circumstantial evidence may indicate an intent to retaliate.  For

23   example, in *Mendocino Environmental Center*, a case concerning environmental activists' First

24   Amendment activities, the Ninth Circuit reversed the district court's grant of summary judgment

25   in defendants' favor where circumstantial evidence of retaliatory animus included evidence that

26   defendants relied on misinformation and material omissions to obtain search warrants, publicized

27   inaccurate and derogatory information about the activists to the media, and monitored the

28   activists' activities.  *Mendocino Envt'l Ctr.*, 192 F.3d at 1302–03.  As the Ninth Circuit observed

15

in that case, "[d]irect evidence of improper motive . . . will only rarely be available." *Id.* at 1302. "Moreover, 'questions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment.'" *Id.* (quoting *Braxton–Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)).

Mr. Ramachandran relies on circumstantial evidence of retaliatory intent. First, he observes that Messrs. Ballard and Jordan sought an inspection warrant for his property approximately six months after he initiated this action and approximately six weeks after he amended his complaint adding Mr. Jordan as a defendant. Dkt. No 34; Dkt. No. 165-3 ¶ 70. Five days after execution of the warrant, Mr. Ballard signed a notice dated September 6, 2018 identifying purported code violations on Mr. Ramachandran's property that Mr. Ramachandran says do not exist. *Id.* ¶¶ 73-74, Ex. 20. Los Altos employees posted six copies of the notice on Mr. Ramachandran's property that same day and continued to post notices every day for the next week. *Id.* ¶ 77. When Mr. Ramachandran removed one of the notices to provide to his attorney, he was immediately stopped by a police officer, who had been watching the property, and was cited with a misdemeanor criminal violation. *Id.* ¶ 78. The timing of these events with respect to the filing of this action and its later prosecution is consistent with an inference of retaliatory intent. *Cozalter*, 320 F.3d at 977 ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.").

Second, Mr. Ramachandran points to evidence that Messrs. Ballard's and Jordan's purported reasons for obtaining and executing the inspection warrant were pretextual and that the alleged code violations are trumped up. Mr. Jordan testified at his deposition that after learning that Mr. Ramachandran refused to give city inspectors permission to enter his property, he authorized the inspection warrant application. Dkt. No. 165-1, Ex. 3 at 63:14–65:13, 74:12–75:3; *see also* Dkt. No. 155-5 at 97:7-12 (Los Altos employee Jon Biggs testifying that the ultimate decision to obtain the inspection warrant was made by Mr. Jordan). He further testified that this was the only occasion on which he had ever authorized an inspection warrant during his tenure with Los Altos, and that the issue was escalated to him as City Manager because of Mr. Ramachandran's pending litigation against Los Altos and its employees. Dkt. No. 165-1, Ex. 3 at

66:2-11.  Mr. Jordan also testified that he had considered the possibility that the inspection warrant could be viewed as retaliation for filing this action and acknowledged the potential retaliatory appearance of an inspection warrant obtained under false pretenses.  *Id.* at 69:16–70:11, 76:12–77:5.

In addition, Mr. Ramachandran points to evidence that Mr. Ballard's declaration in support of the inspection warrant application omitted information and contained inaccurate statements. Dkt. No. 165 at 8–12.  For example, in paragraph 4 of the declaration, Mr. Ballard asserted that a video taken of a prior inspection of Mr. Ramachandran's garage in July 15, 2013 showed that a cooking range, microwave, dishwasher, stacked washer dryer, refrigerator, shower, toilet and sink had been installed in the detached garage, without Los Altos's permission.  Dkt. No. 166, Ex. 5 ¶ 4.  However, at his deposition, Mr. Ballard acknowledged that the video he described in paragraph 4 did not actually show that a cooking range, dishwasher, refrigerator, washer, or dryer had been installed.  Dkt. No. 165-1, Ex. 1 at 242:12–243:8.  Additionally, Mr. Ballard stated in his declaration that Mr. Ramachandran's property was not large enough to permit a second living unit with a kitchen under the LAMC, i.e., that it was less than 15,000 square feet.  Dkt. No. 166, Ex. 5 ¶¶ 5, 11-12.  However, Mr. Kornfield testified at his deposition that a city planner would refer to, among other things, assessed records for lot size determinations, and the Santa Clara County Assessor's Office Public Information for Mr. Ramachandran's property—of which the Court takes judicial notice—shows that the property exceeds 15,000 square feet.  *See* Dkt. No. 165-1, Ex. 2 at 170:8–173:25; Dkt. No. 166, Ex. 1. Defendants do not dispute that Mr. Ballard's declaration included some incorrect or misleading statements and omissions.  *See* Dkt. No. 167 at 5–6. However, they argue that these statements and omissions were immaterial, and that Mr. Ramachandran's protected activity was not the but-for cause of any conduct leading to the preparation and submission of the declaration containing such statements and omissions. Although the facts are disputed, a reasonable jury could consider Mr. Jordan's authorization of the inspection warrant application and Mr. Ballard's reliance on inaccurate information or material omissions in his supporting declaration to be circumstantial evidence of a retaliatory motive.  *See Mendocino Envt'l Ctr.*, 192 F.3d at 1302–03.

17

United States District Court
Northern District of California

1    Mr. Ramachandran also asserts that the purported code violations discovered during the

2    inspection that followed were not, in fact, violations of the LAMC.  Dkt. No. 165-3 ¶¶ 82-83, Ex.

3    21.  Defendants disagree.  Dkt. No. 197 at 7:22–8:13.  The record on this point is not well-

4    developed.  However, it appears that there is a dispute of fact on this point as well.  If Mr.

5    Ramachandran were able to show that he was cited for code violations that did not exist, such

6    evidence also may be circumstantial evidence of retaliatory intent.  *See, e.g.*, *Clark v. Neven*, No.

7    2:10-cv-00944-RLH-RJJ, 2010 WL 4774257, at *3 (D. Nev. Nov. 16, 2010) (prisoner stated

8    plausible retaliation claim against defendant who filed false disciplinary charges against him for

9    filing a grievance against her and a lawsuit).

10    In addition, defendants argue that even in the absence of Mr. Ramachandran's protected

11    conduct, Messrs. Ballard and Jordan would have taken the same actions.  They argue that the

12    Jacobses complained in great detail to Los Altos about code violations on Mr. Ramachandran's

13    property, and that Los Altos has a duty to investigate citizen complaints to determine whether

14    threats to public health and safety exist and to abate code violations, thereby justifying Messrs.

15    Ballard's and Jordan's application for an inspection warrant and subsequent enforcement action.[3]

16    Dkt. No. 154 at 13–15; Dkt. No. 165-3, Ex. 18.  However, even if Messrs. Ballard and Jordan had

17    an obligation to investigate the Jacobses' complaint and to obtain an inspection warrant,

18    defendants have not shown as a matter of law that, in the absence of Mr. Ramachandran's filing

19    and prosecution of this action, they nevertheless would have relied on a faulty declaration to

20    obtain the warrant or caused Mr. Ramachandran to be prosecuted for removing a posted notice.[4]

21    Rather, the facts on this point are disputed.

22    The Court concludes that there exists a dispute of fact concerning whether Messrs. Ballard

23    and Jordan acted with retaliatory motive.  Mr. Ramachandran's showing on this point may be

24    sufficient for a reasonable jury to find in his favor on the third element of his First Amendment

25    
26    [3] The Court notes that Mr. Ballard's declaration does not refer to any complaint from the Jacobses as support for an inspection.  *See* Dkt. No. 166, Ex. 5.

27    [4] It is not clear what role, if any, Mr. Ballard and Mr. Jordan played in initiating or supporting the prosecution.

28

1   retaliation claim against both Mr. Ballard and Mr. Jordan, and defendants have not shown as a

2   matter of law that they would have taken the same actions had Mr. Ramachandran not filed and

3   prosecuted this action.  Accordingly, as there is a genuine dispute of material fact on this point, the

4   Court denies defendants' motion for summary judgment on the First Amendment claims as to

5   Messrs. Ballard and Jordan.

6                    **3.    Qualified immunity**

7          Defendants contend that Messrs. Ballard and Jordan are entitled to qualified immunity with

8   respect to Mr. Ramachandran's First Amendment claim.  Dkt. No. 154 at 15, 19.

9          The doctrine of qualified immunity shields a government official performing discretionary

10  functions from individual liability for civil damages if the official's conduct does not violate a

11  clearly established constitutional right.  *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066–67

12  (9th Cir. 2016).  It does not apply to government officials sued in their official capacity.  *Cmty.*

13  *House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 965 (9th Cir. 2010).  Because Mr.

14  Ramachandran asserts claims against Messrs. Ballard and Jordan in their individual and official

15  capacities in addition to *Monell* claims against Los Altos, Dkt. No. 153 ¶¶ 8, 86-99, the Court

16  understands Mr. Ramachandran's § 1983 First Amendment claim to be brought against Messrs.

17  Ballard and Jordan in their individual capacities only.[5]  *Hafer v. Melo*, 502 U.S. 21, 25 (1991)

18  ("[O]fficial-capacity suits generally represent only another way of pleading an action against an

19  entity of which an officer is an agent.  Suits against state officials in their official capacity

20  therefore should be treated as suits against the State.") (internal quotation marks and citations

21  omitted).

22         Where, as here, defendants assert qualified immunity at the summary judgment stage, the

23  court conducts a two-prong inquiry.  *Tolan v. Cotton*, 572 U.S. 650, 655 (2014).  Viewing the

24  record in the light most favorable to the non-moving party, the Court considers "(1) whether there

25  has been a violation of a constitutional right; and (2) whether that right was clearly established at

26  the time of the officer's alleged misconduct."  *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir.

27

28  [5] The same applies to Mr. Ramachandran's second claim for violation of his Fourteenth
    Amendment rights against Messrs. Ballard, Kornfield, and Jordan.

United States District Court
Northern District of California

1    2014).  A court may exercise its discretion to address either prong first.  *Pearson v. Callahan*, 555

2    U.S. 223, 236 (2009).

3         With respect to the first prong of the qualified immunity analysis, defendants contend that

4    Messrs. Ballard's and Jordan's conduct was not substantially motivated by Mr. Ramachandran's

5    protected activity and that therefore they did not violate his First Amendment rights.  Dkt. No. 154

6    at 15.  As discussed above, the Court concludes that there exists a genuine dispute of material fact

7    on this point that precludes summary judgment.  With respect to the second prong, defendants do

8    not dispute that filing and prosecuting a lawsuit against a government entity and its employees

9    implicates a clearly established constitutional right.  *See, e.g.*, *Soranno's Gasco, Inc. v. Morgan*,

10   874 F.2d 1310, 1313–14, 1319 (9th Cir. 1989) (finding defendants not entitled to qualified

11   immunity for suspending plaintiff's petroleum plant permit because "[i]t could hardly be disputed

12   that at the time of the permit suspension an individual had a clearly established right to be free of

13   intentional retaliation by government officials based upon that individual's constitutionally

14   protected expression," including filing suit against defendant officials); *CarePartners, LLC v.*

15   *Lashway*, 545 F.3d 867, 883 (9th Cir. 2008) (no qualified immunity for retaliatory enforcement of

16   state boarding home laws and regulations against boarding home operator for publicly criticizing

17   state agency and filing administrative appeal of agency decision based on *Soranno's Gasco*).

18        Accordingly, the Court finds that Messrs. Ballard and Jordan are not entitled to qualified

19   immunity on Mr. Ramachandran's First Amendment claim.

20        **D.    Second Claim: Violation of Fourteenth Amendment Against Individual
               Defendants**

21

22        Mr. Ramachandran asserts that the individual defendants violated his Fourteenth

23   Amendment right to equal protection by discriminating against him on the basis of race or national

24   origin by enforcing LAMC requirements against him as part of an ongoing custom or practice of

25   discriminating against non-white homeowners.  Dkt. No. 153 ¶¶ 31, 44, 48, 52-53, 92-95; Dkt. No.

26   165 at 2–4, 18–19, 22–24.  Mr. Ramachandran contends that he has been deprived of the use and

27   enjoyment of his property, and that his property has been devalued compared to those of white

28   homeowners.  *Id.* ¶¶ 92-95.

United States District Court
Northern District of California

1   Defendants move for summary judgment on this claim against Messrs. Ballard, Kornfield,

2   and Jordan on four grounds: (1) the statute of limitations bars Mr. Ramachandran's claim for any

3   alleged acts occurring before February 25, 2016; (2) Mr. Ramachandran was not treated

4   differently than similarly situated homeowners because of his race or national origin; and (3) the

5   individual defendants are entitled to protection under the qualified immunity doctrine.  Dkt. No.

6   154 at 15–19.  The Court addresses each argument in turn.

7   **1.   Statute of limitations**

8   Defendants argue that, like his First Amendment claim, Mr. Ramachandran's Fourteenth

9   Amendment claim is barred by the two-year statute of limitations to the extent the claim relies on

10   conduct occurring before February 25, 2016.  Dkt. No. 154 at 16.  Mr. Ramachandran disagrees

11   and contends that he is entitled to seek relief for conduct occurring outside the limitations period

12   under the continuing violations doctrine.  Dkt. No. 165 at 18–19.

13   As the Ninth Circuit recently explained, "[t]he continuing violations doctrine functions as

14   an exception to the discovery rule of accrual allowing a plaintiff to seek relief for events outside of

15   the limitations period."  *Bird v. Dept. of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (per

16   curiam) (internal quotation marks omitted).  The continuing violations doctrine may apply in two

17   ways: first, to "a series of related acts, one or more of which falls within the limitations period,"

18   and second, to "the maintenance of a discriminatory system both before and during [the

19   limitations] period."  *Id.* (quoting *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir.

20   1997)).  Following the Supreme Court's decision in *National Railroad Passenger Corporation v.

21   Morgan*, 536 U.S. 101 (2002), application of the continuing violations doctrine has been sharply

22   curtailed.  *Id.* at 746–48.  In *Bird*, the Ninth Circuit observed that after *Morgan*,

23   little remains of the continuing violations doctrine.  Except for a
     limited exception for hostile work environment claims—not at issue
24   here—the serial acts branch is virtually non-existent.  Moreover,
     while we have left room for the systematic branch to apply to class-
25   wide pattern-or-practice claims, . . . we have consistently refused to
     apply the systematic branch to rescue individualized claims that are
26   otherwise time-barred.

27   *Id.* at 748 (internal citation omitted).

28   Mr. Ramachandran contends that Messrs. Ballard, Kornfield, and Jordan have engaged in a

United States District Court
Northern District of California

21

custom and practice of discriminating against non-white homeowners by enforcing LAMC requirements against them while not enforcing those requirements as strictly against white homeowners.  Dkt. No. 165 at 18–19; Dkt. No. 153 ¶¶ 80, 92-95.  He contends that this custom and practice has existed since at least May 2011 and continues to the present.  *See* Dkt. No. 165-3 ¶ 89, Ex. 24 at ECF pp. 226.  This is the type of claim that *Bird* appears to have contemplated as potentially suitable for application of the continuing violations doctrine.  *Bird*, 935 F.3d at 748; *see also Garcia v. City & Cty. of Honolulu*, No. CV 18-00100 ACK-WRP, 2020 WL 5604034, at *22 –23 (D. Haw. Sept. 18, 2020), *reconsideration denied*, No. CV 18-00100 ACK-WRP, 2020 WL 6379271 (D. Haw. Oct. 30, 2020).  However, it is unclear from the summary judgment record whether Mr. Ramachandran's claim encompasses any conduct by the individual defendants before and during the limitations period, as required under the continuing violations doctrine.  *See Bird*, 935 F.3d at 746; *see also Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) ("An official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'") (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)).  In opposing summary judgment, Mr. Ramachandran refers to some conduct by Mr. Ballard and Mr. Kornfield before and after February 25, 2016.  *See, e.g.,* Dkt. No. 165-3 ¶¶ 5, 19, 28, 37, 48, 55-62.  He cites no specific conduct by Mr. Jordan after February 25, 2016, except for Mr. Jordan's authorization of the inspection warrant.  Dkt. No. 197 at 23:12–24:14; *see* Dkt. No. 165.  Moreover, Mr. Ramachandran does not explain how any of this conduct relates to his claim of disparate treatment based on race or national origin.

Nevertheless, for purpose of this motion only, the Court will assume, without finding, that the continuing violations doctrine applies and that the statute of limitations does not bar Mr. Ramachandran's Fourteenth Amendment claim against the individual defendants for conduct occurring before February 25, 2016.

### 2.    Merits of the Fourteenth Amendment claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne*

*Living Center*, 473 U.S. 432, 439 (1985).

As a threshold matter, the parties disagree about the nature of Mr. Ramachandran's equal protection claim and therefore the proper standard by which the Court should analyze defendants' summary judgment motion.  Defendants say that Mr. Ramachandran claims selective enforcement of the LAMC against non-white homeowners, and that to prevail on such a claim, Mr. Ramachandran must show both that defendants' enforcement of the LAMC had a discriminatory effect and that defendants were motivated by a discriminatory purpose.  Dkt. No. 154 at 16–19; Dkt. No. 197 at 11:16–12:10; *Rosenbaum v. City and Cty. of San Francisco*, 484 F.3d 1142, 1152–53 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).  Mr. Ramachandran says that he does not rely on a selective enforcement theory, but instead asserts a claim of disparate treatment based on race or national origin.  Dkt. No. 165 at 24 ("Defendants have mischaracterized the discrimination claim as a 'selective enforcement' claim."); Dkt. No. 197 at 42:3–43:16, 46:9-25.  Citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977), he argues that his evidentiary burden on summary judgment is lower than it would be for a claim of selective enforcement.  Dkt. No. 165 at 23–24.

The Ninth Circuit has explained the relevant distinction as follows:

> [P]laintiffs who allege disparate treatment under statutory anti-discrimination laws need not demonstrate the existence of a similarly situated entity who or which was treated better than the plaintiffs in order to prevail.  Proving the existence of a similarly situated entity is only *one* way to survive summary judgment on a disparate treatment claim.  A plaintiff does not, however, have to rely on the *McDonnell Douglas* [*v. Green*, 411 U.S. 792 (1973)] approach to create a triable issue of fact regarding discriminatory intent in a disparate treatment case.  Instead, he may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way.

> When plaintiffs rely on the "direct or circumstantial evidence" approach, instead of *McDonnell Douglas*, to survive summary judgment, we turn to the "sensitive" multi-factor inquiry articulated by the Supreme Court in *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 266 (1977), to determine whether the plaintiffs have created a triable issue of fact that the defendant's actions were motivated by discriminatory intent.  Under *Arlington Heights*, a court analyzes whether the defendant's actions were motivated by a discriminatory purpose by examining (1) statistics demonstrating a clear pattern unexplainable on grounds other than discriminatory

ones, (2) [t]he historical background of the decision, (3) [t]he specific sequence of events leading up to the challenged decision, (4) the defendant's departures from its normal procedures or substantive conclusions, and (5) relevant legislative or administrative history.  These factors are non-exhaustive.  When a plaintiff opts to rely on the *Arlington Heights* factors to demonstrate discriminatory intent through direct or circumstantial evidence, the plaintiff need provide very little such evidence . . . to raise a genuine issue of fact . . . ; any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a fact-finder.

*Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158–59 (9th Cir. 2013)

(internal quotation marks and citations omitted, emphasis original).

The difficulty with Mr. Ramachandran's position is that the disparate treatment of which he complains is a custom or practice of selective enforcement of the LAMC against non-white homeowners like himself, while white homeowners' code violations are more frequently overlooked.  In order to show that kind of disparate treatment, Mr. Ramachandran must point to evidence sufficient to support a finding in his favor at trial—regardless of what label he assigns to his claim.  Mr. Ramachandran principally relies on three pieces of evidence in support of his claim: (1) the documents in Exhibit 24 to his declaration which he says show that Los Altos has disproportionately enforced the LAMC against non-white homeowners since at least May 25, 2011, (2) Los Altos's approval of the Jacobses' property improvement projects but not his, and (3) the fact that a Los Altos employee once told him to "go back to India."  Dkt. No. 165 at 22–24; Dkt. No. 165-3, Ex. 24 at ECF pp. 227–28.  The Court addresses all of this evidence in evaluating defendants' motion.

### a.    Exhibit 24

Exhibit 24 consists of a selection of documents Mr. Ramachandran and another person obtained from PRA requests as well as documents Mr. Ramachandran obtained through discovery in his state court action involving the Jacobses.  Dkt. No. 165-3 ¶¶ 86-88.  Mr. Ramachandran points to the documents in Exhibit 24 as evidence that Los Altos employees have a custom or practice of enforcing the LAMC more strictly against non-white homeowners seeking to improve their property than white homeowners. Dkt. No. 165 at 24.  He says that he is "one of fifteen non-Caucasian homeowners in Los Altos who have been denied permits to improve their properties

United States District Court
Northern District of California

1    while there are no more than four Caucasian homeowners who have been denied such permits."[6]

2    *Id.* at 22.  He relies on his own assessment of the homeowners' race or ethnicity.  Dkt. No. 165-3 ¶

3    90.

4          Exhibit 24 contains no admissible evidence that supports an inference of discrimination, let

5    alone an inference of a custom or practice.  As noted above, the Court has already concluded that

6    the contents of the documents reflecting purported communications from the homeowners are

7    inadmissible hearsay.  *See supra* Section III.A.2.  In addition, the Court also has already

8    concluded that Mr. Ramachandran's assessment of the homeowners' race or ethnicity is not

9    admissible.  *Id.*  Even if the Court were to consider all of the documents in Exhibit 24 and accept

10   Mr. Ramachandran's classifications of white and non-white homeowners, these documents

11   nevertheless do not support Mr. Ramachandran's claim of disparate treatment.  First, Mr.

12   Ramachandran says that he "gleaned" the documents included in Exhibit 24 from a larger

13   collection of records, without explaining how he made his selections.  Dkt. No. 165-3 ¶ 88.  This

14   unexplained selection undermines Mr. Ramachandran's claim that the documents reliably reflect

15   how Los Altos treats similarly situated white and non-white homeowners.  Second, even if the

16   Court were to assume that between May 25, 2011 and September 2018 (*see* Dkt. No. 165-3, Ex.

17   24 at ECF pp. 227–28), Los Altos and the individual defendants enforced the LAMC against 15

18   non-white homeowners but only four white homeowners, this cannot be considered evidence of

19   disparate treatment because Mr. Ramachandran merely contrasts these statistics with census data

20   reflecting the racial composition of the *overall population* of Los Altos, rather than data reflecting

21   the racial composition of *homeowners who made improvements to their property* in Los Altos (or

22   some other possibly relevant comparison).  *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1261

23   (9th Cir. 2016) (finding that plaintiff's reliance on general population statistics did not establish

24   that Mexican nationals were disproportionately impacted by challenged restraint policy); *cf. Pac.*

25   *Shores Props.*, 730 F.3d at 1158–59 (evidence of "statistics demonstrating 'a clear pattern

26

27   ───────────────
     [6] Mr. Ramachandran's opposition characterizes Exhibit 24 as reflecting *denials* of permits.  This
     description is at odds with the documents in Exhibit 24, none of which refer to permit denials, and
28   also inconsistent with Mr. Ramachandran's claim that defendants discriminated with respect to
     *enforcement of code violations*.

25

1    unexplainable on grounds other than' discriminatory ones" can support a claim of disparate

2    treatment) (quoting *Arlington Heights*, 429 U.S. at 266–68).

3         In sum, nothing in Exhibit 24 supports Mr. Ramachandran's claim that defendants have

4    engaged in a custom or practice of disparate treatment based on race or national origin.

5                         **b.      The Jacobses**

6         Mr. Ramachandran also cites the Jacobses as white homeowners who were granted "a

7    permit to create a second living unit from an illegal, unpermitted structure."  Dkt. No. 165 at 22.

8    Defendants dispute this characterization of the Jacobses' second living unit and why Los Altos

9    permitted it.  Dkt. No. 154 at 5–6, 11, 12–13, 17–19.  It is not entirely clear how this evidence,

10   even if viewed in the light most favorable to Mr. Ramachandran, supports his claim that

11   defendants engaged in a custom or practice of discrimination.  At most it shows that one white

12   homeowner received a permit for a particular structure on one occasion.

13                        **c.      Mr. Anderson's comments**

14        In 2013, Greg Anderson, who was then a Los Altos employee, asked Mr. Ramachandran

15   why he lived in Los Altos and told him to "go back to India."  Dkt. No. 165-3 ¶ 16.  Mr.

16   Ramachandran filed a formal complaint with Los Altos about Mr. Anderson's behavior.  *Id.* ¶¶ 17-

17   18, 24, Ex. 6.  A week later, Mr. Ballard visited Mr. Ramachandran's home, remarked that Mr.

18   Anderson was a "good employee," and attempted to persuade Mr. Ramachandran that his

19   complaint was "misguided."  *Id.* ¶¶ 19, 20.  According to Mr. Ramachandran, Mr. Ballard also

20   became "belligerent," threatened Mr. Ramachandran with financial penalties, and demanded Mr.

21   Ramachandran take other steps with respect to other structures on his property.  *Id.* ¶ 19.  Mr.

22   Ramachandran does not suggest that Mr. Kornfield or Mr. Jordan had any role with respect to

23   these matters.  Defendants do not dispute Mr. Ramachandran's characterization of Mr. Anderson's

24   or Mr. Ballard's conduct.

25        Considering the evidence in the light most favorable to Mr. Ramachandran, Mr.

26   Anderson's comments, Mr. Ballard's defense of Mr. Anderson, and Los Altos's apparent lack of

27   action in response to Mr. Ramachandran's complaints may be circumstantial evidence that

28   provides relevant context for the enforcement actions Mr. Ramachandran asserts defendants took

United States District Court
Northern District of California

26

against him and other non-white homeowners.  *See Pac. Shores Props.*, 730 F.3d at 1158–59

(citing "historical background" as among the relevant factors that may be considered) (quoting

*Arlington Heights*, 429 U.S. at 266–68).  However, this evidence, which is specific to Mr.

Ramachandran and limited to interactions occurring in 2013, does not support Mr.

Ramachandran's claim of a custom or practice of discrimination in enforcement of the LAMC

with respect to non-white homeowners in Los Altos.

   In sum, because Mr. Ramachandran frames his Fourteenth Amendment claim against

Messrs. Ballard, Kornfield, and Jordan as a claim that defendants engaged in a custom or practice

of selective enforcement of the LAMC against non-white homeowners like himself while white

homeowners' code violations were more frequently overlooked, he must produce specific

admissible evidence to show that a genuine dispute of fact exists for trial with respect to this

claim.  However, he points to no admissible evidence that defendants enforced the LAMC against

homeowners who made property improvements based on those homeowners' race, ethnicity, or

national origin.  Evidence of a single derogatory remark by a Los Altos employee in 2013 and of

Mr. Ballard's subsequent interactions with Mr. Ramachandran concerning that remark is

insufficient, without more, to support a claim that the individual defendants engaged in a custom

or practice of discrimination with respect to code enforcement.  *Mendiola-Martinez*, 836 F.3d at

1260–61 (offensive quotes about Mexican nationals attributed to sheriff were not direct evidence

of intent to discriminate against Mexican nationals in implementation of restraint policy); *cf.*

*Avenue 6E Investments, LLC v. City of Yuma, Ariz.*, 818 F.3d 493 (9th Cir. 2016) (plaintiffs

plausibly alleged disparate treatment under *Arlington Heights* based on use of racially

discriminatory "code words," defendant's departure from its normal procedures or substantive

conclusions, and disproportionate impact on Hispanics resulting from defendant's decision).  For

this reason, the Court concludes that Mr. Ramachandran has not produced sufficient evidence

from which a reasonable jury could find in his favor on his Fourteenth Amendment claim against

the individual defendants, and these defendants are entitled to summary judgment in their favor on

this claim.

United States District Court
Northern District of California

### 3.      Qualified immunity

Defendants contend that Messrs. Ballard, Kornfield, and Jordan are entitled to qualified immunity on Mr. Ramachandran's Fourteenth Amendment claim. Dkt. No. 154 at 19. Defendants do not dispute the existence of a clearly established right in their briefing. At the hearing, defendants acknowledged that a "simple right to be equally treated as other similarly situated citizens in your city" is clearly established, but also suggested that the Court view Mr. Ramachandran's asserted right far more narrowly. *Id.* at 17:18–18:9 ("If we were to say if the constitutional violation is whether a non-white resident is prohibited from having an ADU despite lot size requirements, then I think that that constitutional right is not clearly established in the same way."). However, because the Court has determined that the individual defendants are entitled to summary judgment in their favor on the merits of this claim, the Court does not reach the question of qualified immunity. *See supra* Section III.D.2.

### E.      Third and Fourth Claims: *Monell* Claims Against Los Altos

Mr. Ramachandran's third and fourth claims assert municipal liability against the city of Los Altos based on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Dkt. No. 153 ¶¶ 96-99. The third *Monell* claim asserts liability based on a widespread and longstanding custom and practice of treating non-white homeowners disparately compared to its white homeowners. *Id.* ¶ 97. The fourth *Monell* claim asserts liability based on a theory that Messrs. Ballard, Kornfield, and Jordan were final decision makers or possessed final policymaking authority. *Id.* ¶ 99.

To prevail on a § 1983 claim against a government entity, Mr. Ramachandran must demonstrate that a "person" acting under color of state law proximately caused a violation of his constitutional or other federal rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A "person" can be a municipality, county, or other local government unit. *Monell*, 436 U.S. at 690; *Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2015) ("[W]hen a California sheriff's department performs the function of conducting criminal investigations, it is a county actor subject to suit under §1983."), *cert. denied*, 135 S. Ct. 980 (2015).

A local government unit cannot be held responsible for the actions of its employees under a respondeat superior theory of liability on a § 1983 claim. *See Bd. of Cty. Comm'rs v. Brown*,

28

520 U.S. 397, 403 (1997); *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008).  Therefore, a plaintiff must demonstrate that the alleged constitutional violation was the result of a policy or custom of that local government unit.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (explaining that to impose liability on a local government under section 1983, the plaintiffs must prove that an "action pursuant to official municipal policy" caused their injury); *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167–68 (9th Cir. 2014) (same).  The policy or custom must "reflect[] deliberate indifference to the constitutional rights of its inhabitants."  *Castro*, 833 F.3d at 1073 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)) (internal quotation marks omitted).

A plaintiff may demonstrate a policy or custom of a municipality in three ways: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity"; (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."  *Rosenbaum*, 484 F.3d at 1155 (quoting *Ulrich v. City and Cty. of San Francisco,* 308 F.3d 968, 984–85 (9th Cir. 2002)) (internal quotation marks and citations omitted).

Los Altos makes three arguments as to why Mr. Ramachandran cannot prevail on his *Monell* claims against it.  First, Los Altos contends that no violation of Mr. Ramachandran's constitutional rights occurred.  Dkt. No. 154 at 20.  As discussed above, Mr. Ramachandran has shown that a genuine dispute of material fact exists as to whether Messrs. Ballard and Jordan, acting in their individual and official capacities, violated his First Amendment rights.  However, he has not shown a violation of his Fourteenth Amendment rights by any individual defendant.  *See supra* Section III.C.2, D.2.

Second, Los Altos argues that Mr. Ramachandran failed to provide evidence of "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity."  Dkt. No. 154 at 20 (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).  As discussed at length above, the Court agrees that Mr. Ramachandran has not produced

United States District Court
Northern District of California

1   evidence from which a reasonable jury could find that Los Altos or its Community Development

2   Department engaged in a longstanding custom or practice of racial discrimination in the

3   enforcement of the LAMC in violation of the Fourteenth Amendment.  *See supra* Section III.D.2.

4   As for his First Amendment retaliation claim, Mr. Ramachandran concedes that the statute of

5   limitations applies to bar a claim for conduct predating February 25, 2016.  *See supra* Section

6   III.C.1.  He does not contend that Los Altos has a longstanding custom or practice of retaliating

7   against residents who exercise their First Amendment rights to file and prosecute lawsuits against

8   the city.

9       Finally, Los Altos argues that, to the extent Mr. Ramachandran's *Monell* claims are based

10   on ratification by a final policymaker, Mr. Ramachandran has not established a constitutional

11   violation.  Defendants do not dispute that Messrs. Ballard or Jordan qualify as final policymakers.

12   *See* Dkt. No. 154 at 21; Dkt. No. 167 at 11.  As described above, Mr. Ramachandran has not

13   established a genuine dispute of fact regarding a violation of his Fourteenth Amendment rights,

14   but he has raised a genuine dispute of fact as to whether Messrs. Ballard and Jordan retaliated

15   against him in violation of his First Amendment rights.  *See supra* Section III.C.2, D.2.  For the

16   same reason, the Court finds that Mr. Ramachandran has established that a genuine dispute of fact

17   exists regarding whether Messrs. Ballard and Jordan, as final policymakers on behalf of Los Altos,

18   violated his First Amendment rights.

19       Accordingly, the Court grants Los Altos's summary judgment motion as to the third

20   *Monell* claim predicated on a longstanding custom or practice.  The Court denies summary

21   judgment as to the fourth *Monell* claim based on a final policymaker theory in connection with

22   Mr. Ramachandran's First Amendment claim only.

23   **F.     Request for Sanctions Pursuant to 28 U.S.C. § 1927**

24       In his opposition brief, Mr. Ramachandran asks the Court to issue an order to show cause

25   why sanctions pursuant to 28 U.S.C. § 1927 should not be imposed on defendants' counsel for

26   moving for summary judgment despite "counsels' [sic] knowledge of the extensive factual support

27   for Plaintiff's pending claims in his Fourth Amended Complaint . . . ."  Dkt. No. 165 at 14–18, 25.

28   That request does not comply with Civil Local Rule 7-8, which requires, among other things, that

motions for sanctions be separately filed.  The Court denies the motion on this ground.  Moreover, in view of defendants' partial success on their summary judgment motion, the Court anticipates that Mr. Ramachandran would have difficulty showing that defendants' counsel have vexatiously multiplied proceedings.

## IV.     CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion for summary judgment as follows:

1. With respect to Mr. Ramachandran's first claim for violation of his First Amendment rights, the Court denies defendants' motion as to Messrs. Ballard and Jordan.  The First Amendment claim as to Mr. Kornfield is barred by the statute of limitations.  Messrs. Ballard and Jordan are not entitled to qualified immunity on this claim.

2. With respect to Mr. Ramachandran's second claim for violation of his Fourteenth Amendment rights, the Court grants defendants' motion.

3. The Court grants Los Altos's summary judgment motion on Mr. Ramachandran's third *Monell* claim for violation of his Fourteenth Amendment rights based on a theory of a longstanding custom or practice of racial discrimination.

4. The Court grants Los Altos's summary judgment motion on Mr. Ramachandran's fourth *Monell* claim based on a theory of final policymaking as to Mr. Ramachandran's Fourteenth Amendment claim, but denies it as to his First Amendment claim.

Mr. Ramachandran's request for an order to show cause why sanctions pursuant to 28 U.S.C. § 1927 should not be imposed on defendants' counsel is denied.

**IT IS SO ORDERED.**

Dated: January 11, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California